Argued and submitted April 28, convictions affirmed; sentence vacated; remanded
for resentencing December 14, 1994

# STATE OF OREGON,
*Respondent,*

*v.*

# ANDREW SCOTT METZ,
*Appellant.*

## (CC91-1287; CA A76618)

887 P2d 795

Diane L. Alessi, Chief Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

HASELTON, J.

Deits, P. J., dissenting.

## HASELTON, J.

Defendant was convicted of aggravated murder for stabbing to death an elderly couple and was sentenced to life imprisonment without the possibility of release or parole. ORS 163.095(1)(d); ORS 163.105(1)(b). He assigns error to the sufficiency of his indictment, to the admission of statements he made to a psychologist, and to the admission, during the penalty phase of the aggravated murder trial, of testimony by the victims' children describing the impact of the crime on their lives. We affirm the verdict of aggravated murder, and remand for resentencing.

■ After the jury was empaneled, defendant argued that his indictment did not charge aggravated murder and moved to be allowed to plead guilty to two counts of murder. Defendant assigns error to the court's denial of that motion and to the court's submission of the charge of aggravated murder to the jury.[1]

■ Under ORS 132.550(7), an indictment must contain:

> "A statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended."

To state facts constituting an offense, an indictment must "allege each of the essential elements of the offense." *State v. Wimber*, 315 Or 103, 109, 843 P2d 424 (1992). However, ORS 132.540(3) provides:

> "Words used in a statute to define a crime need not be strictly pursued in the indictment, but other words conveying the same meaning may be used."

*See also State v. Cohen*, 289 Or 525, 529, 614 P2d 1156 (1980). Finally, an indictment should serve the following functions:

> "(1) to inform the defendant of the nature of the crime with sufficient particularity to enable him to make his defense, (2) to identify the offense so as to enable the defendant to avail himself of his conviction or acquittal thereof if

---

[1] To the extent that defendant is challenging his indictment as not sufficiently definite and certain, his motion after the jury had been empaneled was untimely. *See State ex rel Schrunk v. Bonebrake*, 318 Or 312, 865 P2d 1289 (1994).

he should be prosecuted further for the same cause, and (3) to inform the court of the facts charged so that it may determine whether or not they are sufficient to support a conviction." *State v. Montez*, 309 Or 564, 597, 789 P2d 1352 (1990).

The essential elements of aggravated murder under ORS 163.095(1) are:

"[M]urder as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances:

"* * * * *

"(d) There was more than one murder victim in the same criminal episode as defined in ORS 131.505."

ORS 163.115(1)(a) defines "murder" as "criminal homicide * * * [w]hen it is committed intentionally * * *."

Defendant's indictment charged that:

"COUNT I

"[Defendant] on or between September 8, 1991 and September 9, 1991, in the County of Clatsop, State of Oregon, then and there being did unlawfully and intentionally caused the death of another human being, to-wit: Ellen McKinnon, by stabbing said Ellen McKinnon, said defendant having caused the death of an additional human being, to-wit: Duncan McKinnon, by stabbing said Duncan McKinnon,

"COUNT II

"as a part of the same act and transaction as alleged in Count I hereof, the said defendant did unlawfully and intentionally cause the death of another human being, to-wit: Duncan McKinnon, by stabbing said Duncan McKinnon, said defendant having caused the death of an additional human being, to-wit: Ellen McKinnon, by stabbing said Ellen McKinnon * * *."

Defendant argues that the indictment is insufficient because it fails to allege that "there was more than one murder victim in the same criminal episode" as required for a conviction of aggravated murder under ORS 163.095(1)(d). We disagree.

Reading each count separately, *see State v. Johnson*, 80 Or App 350, 355, 722 P2d 1266 (1986), we conclude that the language used in the indictment was such as "to enable a

person of common understanding to know what is intended." Considering that both counts allege that defendant *intentionally* killed the first named victim by stabbing, *having caused the death* of a second named victim by stabbing, it does not require an impermissible mental leap to infer that the second victim, like the first, was killed intentionally and during the same criminal episode. *See State v. Cohen, supra,* 289 Or at 530 (an indictment that charged the defendant with causing the death of the victim "by shooting him" sufficiently alleged the element that the defendant "personally" caused the death). Our conclusion is reinforced by the fact that the functions of an indictment were clearly served in this case: (1) defendant admitted on appeal that he "knew the state meant to charge him with aggravated murder and acted accordingly in preparing his defense";[2] and (2) the trial court concluded "that [there was] no mystery about what's going on in this case, what the charges really [were] and where the state [was] going with this."

■ Defendant next assigns error to the court's admission of statements that defendant made to the state's psychologist, Dr. Abrams, without first being told of his right to have counsel present during the interview. Abrams explained to defendant that he was working for the prosecution and that anything defendant told Abrams could be used against him. However, Abrams did not warn defendant of his right to have counsel present during the examination. In the examination, defendant made material and potentially prejudicial admissions to Abrams.

Since *Shepard v. Bowe,* 250 Or 288, 293, 442 P2d 238 (1968), the Supreme Court has repeatedly held that criminal defendants cannot be compelled to answer questions pertaining to their alleged crimes in pretrial psychiatric examinations, and that defense counsel must be allowed to attend such examinations for the purpose of advising their clients against self-incrimination. *State v. Mains,* 295 Or 640, 669 P2d 1112 (1983), details the information that defendant must

---

[2] Defendant cites *State v. Trueax,* 315 Or 396, 845 P2d 1291 (1993), for the proposition that a defendant's awareness that the state intends to charge a certain crime is irrelevant to our consideration of the sufficiency of an indictment under ORS 132.550(7). Defendant reads too much into *Trueax.* In that case, the state conceded the insufficiency of the indictment, and the only dispute was over the proper consequence of the defective indictment.

receive before submitting to a criminal psychiatric examination:

> "In the absence of legislation, we believe that the following are the relevant information and warnings required in the setting of a psychiatric examination of a defendant conducted on behalf of the state to guarantee the right not to be compelled to testify against oneself in a criminal prosecution under Article I, Section 12, of the Oregon Constitution.

> "If counsel is not present at the examination * * * the defendant should be asked by the examiner whether he understands that counsel is entitled to be present and has consented to be examined in the absence of counsel. The defendant should *further* be informed that the examination is conducted on behalf of the prosecution and its results will be available for use against the defendant without the confidentiality of a doctor-patient relationship." 295 Or at 645. (Emphasis supplied.)

The state argues that the purpose of the *Mains*-prescribed warnings was satisfied in this case because Abrams clearly told defendant that he was in an adversarial posture, *i.e.*, that Abrams was working for the state and that defendant's statements could be used against him. The state points, particularly, to *State v. Stevens*, 311 Or 119, 138, 806 P2d 92 (1991) (*Stevens I*), where the court distinguished *Mains* from other interrogation situations by explaining that the point of *Mains* was to ensure that the defendant does not "misunderstand the nature of the relationship between himself and the psychiatrist." However, nothing in *Stevens I* repudiates *Mains'* mandate that the defendant be informed of *both* the adversarial nature of the examination and the right to have counsel present. Here, Abrams did not comply with the second requirement.

■ The state also argues, however, that Abrams' warnings were adequate because, the day before the psychological examination, officers had twice informed defendant of his *Miranda* rights, including the right to counsel and, on the second reading, defendant informed the officers that he practically had the warnings memorized. Under certain circumstances, earlier warnings remain valid for purposes of later questioning. *See Stevens I, supra*, 311 Or at 138 (the defendant who was warned of rights immediately before being transferred to a police car for questioning did not need to be

reinstructed). Here, however, defendant was warned of his right to counsel 29 hours earlier and in the context of interrogation by police officers, not a psychological exam. The circumstances had materially changed between the officers' advice of rights and the psychological examination the next day. *Cf. State v. Hadley*, 105 Or App 467, 805 P2d 714 (1991) (officer did not need to readvise the defendant after a "two or three minute drive" to the police station, because questioning related to the same offense and the circumstances of interrogation had not "materially changed"). Thus, the earlier *Miranda* warnings by officers were not sufficient to eliminate the requirement that Abrams provide the warnings specified by *State v. Mains, supra*, for a psychological exam.

■■ The state argues that even if Abrams' testimony was tainted by noncompliance with *Mains*, any error in the admission of that testimony was harmless. We agree. As to the guilt phase of defendant's trial, there was overwhelming evidence of guilt, including defendant's confession to the police officers that he killed the victims. Accordingly, the error was harmless under any standard.[3] With respect to Abrams' testimony during the penalty phase, defendant argues, without elaboration, that Abrams' testimony was "much more detailed than defendant's statements to the police." Defendant does not identify any particulars in which Abrams' penalty phase testimony materially and prejudicially differed from other evidence properly before the jury. In such circumstances, we will not search the record or speculate about possible prejudice. Again, the evidentiary error was harmless.

■ Finally, defendant argues that the trial court erred in admitting evidence during the penalty phase about the impact of the murders on the victims' adult children and their families. That testimony was tragic and compelling. The victims' daughter, who found them in the motel room, testified: "Every time I close my eyes, I see my mother's dead body, I see my father's face and the slashes in his neck." She also testified that her "sense of security" was gone and that it

---

[3] Under the Oregon Constitution, a verdict must be affirmed if there is "little likelihood" that the error affected it; for violations of federal constitutional rights, the error must be harmless beyond a reasonable doubt. *State v. Walton*, 311 Or 223, 231, 809 P2d 81 (1991). We need not decide whether Abrams' interview with defendant also violated the federal constitution because, in any event, the error was harmless beyond a reasonable doubt.

would take her a "long, long, long time" to recover from her parents' deaths. The victims' son testified that his family had been severely disrupted by the murders and that his four-year-old son had asked if he could "call heaven" to talk to his grandparents.[4]

In *Payne v. Tennessee,* 501 US 808, 111 S Ct 2597, 115 L Ed 2d 720 (1991), the Supreme Court overruled *Booth v. Maryland,* 482 US 496, 107 S Ct 2529, 96 L Ed 2d 440 (1987), and *South Carolina v. Gathers,* 490 US 805, 109 S Ct 2207, 104 L Ed 2d 876 (1989), and held that the Eighth Amendment does not bar states from choosing "to permit the admission of victim impact evidence and prosecutorial argument on that subject." Because there is no federal constitutional impediment to the admission of victim impact or family impact evidence, we consider only whether such evidence is admissible under Oregon law. Our task is further narrowed because defendant raises no challenge under the Oregon Constitution. Thus, the issue before us is purely statutory.

Defendant asserts that victim impact testimony was inadmissible as immaterial to any issue in the penalty phase of an aggravated murder trial, including jurors' consideration of the so-called "fourth question." ORS 163.150(1)(b)(D). ORS 163.150, which specifies the process to be followed in the sentencing phase of an aggravated murder case, provides, in part:

> "(1)(a) Upon a finding that the defendant is guilty of aggravated murder, the court, except as otherwise provided in subsection (3) of this section, shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to life imprisonment, as described in ORS 163.105(1)(c), life imprisonment without the possibility of release or parole, as described in ORS 163.105(1)(b), or death. * * * In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence; however, neither the state nor the defendant shall be allowed to introduce repetitive evidence that has previously been

---

[4] As described immediately below, under ORS 163.150(1)(a), "all evidence previously offered and received" in the guilt phase "may be considered for purposes of the sentencing hearing." Consequently, the victims' daughter's testimony during the guilt phase, in which she described finding her parents immediately after the crime and her last moments with her dying father, was properly before the jury during the penalty phase. Defendant does not contend otherwise.

offered and received during the trial on the issue of guilt. The court shall instruct the jury that all evidence previously offered and received may be considered for purposes of the sentencing hearing.

"* * * * *

"(b) Upon the conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:

"(A) Whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that death of the deceased or another would result;

"(B) Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society;

"(C) If raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased; and

"(D) *Whether the defendant should receive a death sentence.*

"* * * * *

"(f) If the jury returns an affirmative finding on each issue considered under paragraph (b) of this subsection, the trial judge shall sentence the defendant to death." (Emphasis supplied.)

The statute further provides, in ORS 163.150(1)(c):

"(A) In determining the issues in paragraph (b) of this subsection, the court shall instruct the jury to consider any mitigating circumstances offered in evidence, including but not limited to the defendant's age, the extent and severity of the defendant's prior criminal conduct and the extent of the mental and emotional pressure under which the defendant was acting at the time the offense was committed.

"(B) In determining the issue in subparagraph (b)(D) of this subsection, the court shall instruct the jury to answer the question 'no' if one or more of the jurors find there is any aspect of the defendant's character or background, or any circumstances of the offense, that one or more of the jurors believe would justify a sentence less than death."

The state contends that victim impact evidence is relevant to ORS 163.150(1)(b)(D) because the prosecution is:

"entitled to produce evidence that makes it less probable that one or more jurors will answer the fourth question 'no.' * * *

"In this case, the victim impact evidence was relevant to rebut defendant's mitigating evidence, which was intended to convince the jurors that these murders were an aberration in defendant's life, that he would not be a danger in the future, and that he did not deserve the death penalty."

The trial court agreed:

"[T]he defendant is asking the jury to act on sentiment, emotion and pity, and these kinds of things, and it seems to me, if all those things go to question four, victim impact ought to go to question four, and, yeah, in order to as a practical matter in order to save time and trouble by allowing a standing objection, I will do that, but I believe now that my ruling is what is good for the goose is good for the gander, actually, and all those things ought to go to the number four question."

The Oregon Supreme Court recently discussed the scope and meaning of the fourth question in *State v. Stevens*, 319 Or 573, 879 P2d 162 (1994) (*Stevens II*). After finding the text and context of ORS 163.150(1)(b) and ORS 163.150(1)(c)(B) unhelpful in ascertaining their meaning, the court reviewed the history of their adoption by the legislature. 319 Or at 580. It concluded from that history that the legislature added the fourth question to ORS 163.150 for the specific purpose of ensuring that Oregon's death penalty statute comported with the requirements of the Eighth Amendment to the United States Constitution as explained in the United States Supreme Court's decision in *Penry v. Lynaugh*, 492 US 302, 109 S Ct 2934, 106 L Ed 2d 256 (1989), and the Oregon Supreme Court's own decision in *State v. Wagner*, 309 Or 5, 786 P2d 93, *cert den* 498 US 879 (1990). 319 Or at 580-83. *Penry* held that, in deciding whether to impose the death penalty, a jury "must be able to consider and give effect to any mitigating evidence relevant to a defendant's background and character or the circumstances of the crime." *Penry v. Lynaugh, supra*, 492 US at 328. *State v. Wagner* held that ORS 163.150, as it then existed, did not provide juries with a meaningful opportunity to consider mitigating evidence as required by *Penry*, and suggested the wording for a fourth question that would correct that defect in the statute. The legislature subsequently adopted the suggested language almost verbatim:

"[The bill amending ORS 163.150] would substitute a new fourth factor that a jury is required to consider in deciding whether or not a person convicted of aggravated murder should be executed. This would conform our statute to language recommended by a recent Oregon Supreme Court case, *State v. Wagner.*" Testimony of Senator Shoemaker, Senate Floor, Tape 195, Side B at 45-48, June 26, 1991.

In short, the legislature adopted the fourth question for a specific purpose, *i.e.*, to ensure consideration of *evidence pertaining to mitigation, with particular reference to a defendant's character, background or crime.* The state is, of course, entitled to specifically controvert mitigating evidence adduced by a defendant. However, the legislature did not intend to throw the penalty phase of capital cases open to consideration of *any* evidence that might sway the jury in one direction or the other.

We particularly note that there is no reference in the legislative history to victim impact evidence. That absence of discussion is unsurprising, because, at the time the legislature developed the current language of ORS 163.150(1)(b)(D) and (c)(B), victim impact evidence was not constitutionally admissible in death penalty proceedings. *Booth v. Maryland, supra,* 482 US at 509. The Supreme Court reversed its position on that issue in *Payne v. Tennessee, supra,* but ORS 163.150 has not been amended since that time.[5]

This history persuades us that victim impact evidence was not, and could not have been, in the minds of the legislators who enacted the fourth question. Nor can it reasonably be viewed as falling within the categories of evidence that those legislators clearly did have in mind—evidence pertaining to mitigation, with particular reference to the defendant's character or background or the circumstances of the crime. We conclude, therefore, that victim impact evidence is immaterial to the fourth question.

The dissent's contrary position, that victim impact evidence is admissible as generally "relevant" under ORS 163.150(1)(a), fails for two reasons. First, with the exception

---

[5] *Payne* was issued on June 27, 1991. The Senate Judiciary Committee proposed the amendments to ORS 163.150 on June 12, 1991; the Senate passed the bill on June 26; and the House approved the amendments, without discussing *Payne*, on June 29.

of a single footnoted reference, the dissent ignores *Stevens II*. Although the dissent contends that we have "ignored the plain language of [ORS 163.150(1)(b)(B) and ORS 163.150-(1)(c)(B)] to create an ambiguity where none exists," and consequently, have "unnecessarily relied on legislative history," 131 Or App at 721, we have merely adhered to *Stevens II's* analysis.[6] For better or worse, the dissent is really a dissent from *Stevens II*.

■ Second, the dissent's "relevance" rationale artificially, and erroneously, divorces relevance from materiality. Evidence is relevant only if it tends to make a material fact more or less probable than it would otherwise be. OEC 401.[7] The only fact material to the jury's consideration of the fourth question, as enacted in 1991 and construed in *Stevens II*, is mitigation, with particular reference to the defendant's character or background, or circumstances of the offense. *See Stevens II, supra*, 319 Or at 583. Because victim impact evidence, by its very nature, does not pertain to that material fact, it cannot be relevant under ORS 163.150(1)(b)(B).

■ As an alternative basis for affirmance, the state argues that victim impact evidence is relevant to the second and third questions the jury must consider under ORS 163.150(1)(b):

"[T]he fact that defendant brutally stabbed and murdered two elderly (and presumably relatively defenseless) people is directly relevant to his future dangerousness and to the lack of provocation on the part of the victims. ORS 163.150(1)(b)(B), (C). That defendant would commit such a murder in a motel, where other guests, who might include

---

[6] In *Stevens II*, our Supreme Court concluded:

"The text of ORS 163.150(1)(b) is written in very general terms. The jury is asked to decide 'whether the defendant should receive a death sentence.' The statute provides that the jury should consider 'any aspect of the defendant's character or background, or any circumstances of the offense' in making that determination. The text is silent as to the meaning of any of those terms. Moreover, the context is not instructive as to what the legislature intended by the terms 'any aspect of the defendant's character or background' or 'any circumstances of the offense.' Because the intent of the legislature is not clear from the text and context of the statute, we turn to legislative history. *See PGE v. Bureau of Labor and Industries, supra*, 317 Or at 611-12." 319 Or at 580.

[7] OEC 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

members of the victims' family, would be almost certain to be traumatized by discovering the victims, also is relevant to his future dangerousness."

The state's argument is inapposite; the examples it gives are not examples of victim impact evidence. The subsequent impact of the crime on the victims' family, however tragic and devastating, is not relevant to whether defendant's conduct was deliberate, ORS 163.150(1)(b)(A); whether defendant will constitute a continuing threat to society, ORS 163.150(1)(b)(B); or whether defendant was reasonably responding to provocation, ORS 163.150(1)(b)(C). We conclude, therefore, that victim impact evidence is not relevant under ORS 163.150(1)(b) to the jury's determination of whether the defendant should receive the death penalty.

■ Finally, the state briefly argues, as yet another alternative basis for affirmance, that victim impact evidence should be admissible under ORS 137.013, the omnibus victim impact statute. That statute provides:

"At the time of sentencing, the victim or the victim's next of kin has the right to appear personally or by counsel, and has the right to reasonably express any views concerning the crime, the person responsible, the impact of the crime on the victim, and the need for restitution and compensatory fine." ORS 137.013.

The broad language of ORS 137.013 cannot be reconciled with the more specific requirements of the aggravated murder sentencing statute. The four questions prescribed by ORS 163.150(1)(b) circumscribe the jury's inquiry in capital cases. Accordingly, the general authorization of ORS 137.013 must give way to the precise limitations of ORS 163.150(1)(b). *See* ORS 174.020. Any other result, including that espoused by the dissent, would permit irrelevant evidence to be interjected into the penalty phase, distorting the capital jury's consideration of the statutorily prescribed questions.[8]

[8] ORS 137.013 was enacted by initiative, as part of 1986 Ballot Measure 10, five years *before* the United States Supreme Court's decision in *Payne v. Tennessee, supra.* Consequently, contrary to the dissent's suggestion, the voters, in approving that provision, did *not* "[make] the choice that the Supreme Court in *Payne* said was permissible." 131 Or App at 723.

It is dangerous to speculate about such "choices." We can never know what Oregonians might have done in 1986, if *Payne* had then been the law. We can only know that, when Ballot Measure 10 was approved, the presentation of victim impact

 Having concluded that the trial court erred in admitting victim impact evidence in the penalty phase of defendant's trial, we consider whether that error was harmless. Error is harmless only if there is "little likelihood that the error affected" the jury's penalty phase verdict. *Stevens II, supra,* 319 Or at 585; *State v. Isom,* 306 Or 587, 595-96, 761 P2d 524 (1988).

Here, defendant was not sentenced to death but was, instead, sentenced to life imprisonment without the possibility of release or parole. ORS 163.105(1)(a), (b). He contends that the introduction of the family impact evidence impermissibly affected the jury's consideration of the optional "fifth question" prescribed by ORS 163.150(2)(a):

> "Upon the conclusion of the presentation of the evidence, the court shall also instruct the jury that if it reaches a negative finding on any issue under subsection (1)(b) of this section, the trial court shall sentence the defendant to life imprisonment without the possibility of release or parole, * * * *unless 10 or more members of the jury further find that there are sufficient mitigating circumstances to warrant life imprisonment*, in which case the trial court shall sentence the defendant to life imprisonment as described in ORS 163.105(1)(c)." (Emphasis supplied.)[9]

Defendant asserts, in particular, that, but for the erroneous admission of the family impact evidence, 10 jurors might have found "sufficient mitigating circumstances to warrant life imprisonment" with the possibility of parole.[10]

---

evidence in capital cases was prohibited under the federal constitution. In that context, the measure's victim impact provisions could only be understood to refer to non-capital proceedings.

[9] ORS 163.105(1)(c) provides:

"If sentenced to life imprisonment, the court shall order that the defendant shall be confined for a minimum of 30 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp."

[10] As the statutory text ("upon the conclusion of the presentation of the evidence") demonstrates, the jury's consideration of the fifth question is part of a single, integrated penalty phase process. Because ORS 163.105(2) does not provide for the presentation of additional evidence after the jury's determination of the first four questions and before its consideration of the fifth, only evidence admissible with respect to the first four questions is properly before the jury in answering the fifth. The state does not contend otherwise.

We agree that the error was not harmless. After reviewing the poignant and compelling family impact evidence, we cannot say that there is "little likelihood" that the jury's determination of the fifth question would have been different if that evidence had been excluded. Accordingly, the sentence of life imprisonment without possibility of release or parole must be vacated, and the case must be remanded for a jury to reconsider the fifth question.

Convictions affirmed; sentence vacated; remanded for resentencing.

**DEITS, P. J.,** dissenting.

I agree with the majority opinion in all respects except for its conclusion that the trial court erred in admitting victim impact evidence in the penalty phase of defendant's trial. Accordingly, I dissent.

The majority is correct that in *Payne v. Tennessee*, 501 US 808, 111 S Ct 2597, 115 L Ed 2d 720 (1991), the Supreme Court held that the Eighth Amendment does not bar states from choosing to allow the admission of victim impact evidence during sentencing proceedings in capital cases. I also agree with the majority that there are no constitutional issues raised in this case; rather, the question here is whether the evidence is admissible under applicable Oregon statutes. My disagreement with the majority is in its conclusion that the pertinent statutes do not allow the admission of victim impact evidence.

ORS 163.150(1)(a) specifies that in the penalty phase of a capital case, "evidence may be presented *as to any matter that the court deems relevant,*" except for repetitive evidence that was offered and received during the guilt phase. (Emphasis supplied.) The statute then provides, in subsection (1)(b), that at the conclusion of the evidence, the court must submit the following issues to the jury:

"(A) Whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that death of the deceased or another would result;

"(B) Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society;

"(C) If raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased; and

"(D) *Whether the defendant should receive a death sentence.*" (Emphasis supplied.)

Finally, ORS 163.150(1)(c) requires the court to give certain instructions to the jury:

"(A) In determining the issues in paragraph (b) of this subsection, the court shall instruct the jury to consider any mitigating circumstances offered in evidence, including but not limited to the defendant's age, the extent and severity of the defendant's prior criminal conduct and the extent of the mental and emotional pressure under which the defendant was acting at the time the offense was committed.

"(B) In determining the issue in subparagraph (b)(D) of this subsection, the court shall instruct the jury to answer the question 'no' if one or more of the jurors find there is any aspect of the defendant's character or background, or any circumstances of the offense, that one or more of the jurors believe would justify a sentence less than death."

The majority concludes that because the legislature enacted the fourth question to ensure consideration of mitigating evidence relevant to a criminal defendant's character, background or crime, it necessarily precludes consideration of any other evidence. I believe that the majority has ignored the plain language of the above provisions to create an ambiguity where none exists. It then unnecessarily relies on legislative history to resolve that perceived ambiguity.

The real issue in this case is, what evidence does the statute authorize a jury to consider in the sentencing phase of a capital proceeding? In construing a statute, the best evidence of the legislature's intent is the text of the provision itself. Also informative at this first level of the analysis is the context of the provision at issue. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). Here, the statute specifies that the parties may present any evidence that the *sentencing court* deems relevant to sentencing. ORS 163.150(1)(a). The text of ORS 163.150(1)(b)(D) provides that one of the issues that the jury must be asked is "[w]hether the defendant should receive a death sentence." On its face, that language does not in any way limit the

evidence that the jury may or may not consider in making its decision on the issue. As to the mandatory jury instruction that accompanies the question, ORS 163.150(1)(c)(B) provides only that the jury's answer shall be "no" *if* one or more of certain specified findings are made. Significantly, it does not say that the jury shall answer "no" *only if* such findings are made. Absent some comparable limiting language, there is absolutely no basis to conclude that the legislature intended the jury to base its answer to the fourth question *exclusively* on the mitigating evidence relevant to the defendant's background and character or the circumstances of the crime. What the legislature has omitted, we may not insert. ORS 174.010. In my view, the language of the fourth question does not preclude the jury from considering nonmitigating evidence that the sentencing court deems relevant to the sentence.[1]

Under my reading of the statute, the pertinent question is whether the sentencing court erred in concluding that the evidence offered here was relevant. In *Payne*, the Supreme Court made it clear that

> "[a] State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated." 501 US at 827.

The sentencing court's decision that the victim impact evidence was relevant to the question of whether defendant should receive a death sentence was completely consistent with *Payne* and, in my opinion, was correct.

Because the sentencing court concluded that the evidence here was relevant, it is not necessary to rely on ORS 137.013 as the statutory basis for allowing victim impact evidence. However, I would note that I disagree with the majority's conclusion that that statute does not apply in

---

[1] In *State v. Stevens*, 319 Or 573, 879 P2d 162 (1994), the Supreme Court also addressed the admissibility of evidence under the fourth question. Although the decision does include some broad language, the issue in that case was quite narrow; namely, whether the testimony offered by the defendant was admissible as relevant mitigating evidence. The focus of the court was on whether the legislature intended that type of evidence to be considered by the jury as mitigating evidence.

capital sentencing proceedings. In adopting ORS 137.013, the voters made the choice that the Supreme Court in *Payne* said was permissible under the Eighth Amendment.[2] It decided that crime victims and their next of kin have the right to appear at the time of sentencing and express their views concerning the crime that the defendant committed and the impact of the crime. That statute provides:

> "At the time of sentencing, the victim or the victim's next of kin has the right to appear personally or by counsel, and has the right to reasonably express any views concerning the crime, the person responsible, the impact of the crime on the victim, and the need for restitution and compensatory fine." ORS 137.013.

The meaning of the statute is clear on its face; there is absolutely nothing in the statute that limits this right to certain types of crimes. The plain language of the statute specifically authorizes victim impact evidence at *all* sentencing proceedings.

The majority concludes that ORS 137.013 is not applicable here, because it believes that the specific provisions of ORS 163.150, concerning death penalty proceedings, prevail over what it characterizes as the more general provisions of ORS 137.013. While the rule of statutory construction that it recites is correct, the majority's conclusion is based on an incorrect assumption; namely, that these two statutes are inconsistent. In my view, they are not inconsistent, and they can and should be read together to give meaning to both.

The majority concludes that ORS 137.013 and ORS 163.150 are inconsistent because "[t]he four questions prescribed by ORS 163.150(1)(b) circumscribe the jury's inquiry

---

[2] ORS 137.013 codifies part of Ballot Measure 10, enacted by initiative in 1986. Ballot Measure 10 was the Crime Victims' Bill of Rights, the stated purpose of which was to protect victims' rights "at each stage of the criminal justice system" and "to secure balanced justice by eliminating unbalanced rules." Or Laws 1987, ch 2, § 2. The comprehensive measure represented the voters' rejection of "the notion that a criminal defendant's rights must be superior to all others," Or Laws 1987, ch 2, § 2, and provided for victims' rights at trial, at sentencing and after sentencing. In view of the voters' clear intent to achieve broad-based recognition of victims' rights in the criminal justice system, it is hardly speculative to assume that the specific provision at issue was intended to apply to all sentencing proceedings, including capital ones. Because victim impact evidence is not constitutionally impermissible in capital sentencing proceedings, I believe that we should give full effect to the voters' decision.

in capital cases." 131 Or App at 718. As discussed above, ORS 163.150 does limit the *issues* that the court is to submit to the jury in making its decision on the death sentence; however, one of those issues is "whether the defendant should receive a death sentence." As the Supreme Court held in *Payne v. Tennessee, supra,* 501 US at 825, victim impact evidence may be relevant in deciding this question if a state authorizes its consideration:

> "We are now of the view that a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant. '[T]he State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family.' *Booth [v. Maryland],* 482 US [496], 517, 96 L Ed 2d 440, 107 S Ct 2529 (White, J., dissenting) (citation omitted)."

The voters' adoption of ORS 137.013 did authorize the consideration of victim impact evidence in sentencing proceedings. The majority disregards the voters' decision to allow victim impact evidence in a sentencing proceeding in a capital case because of its conclusion that the general authorization of ORS 137.013 is inconsistent with ORS 163.150. That view, however, is premised on its erroneous conclusion that the provisions of ORS 163.150(1)(c), which direct the court to instruct the jury to fully consider mitigating evidence, are a *limitation* on what the jury may consider in such proceedings. As discussed above, I do not read those provisions as representing a legislative decision to preclude otherwise relevant evidence. Because ORS 137.013 represents a statutory determination that victim impact testimony is relevant as a matter of law, it is not inconsistent with ORS 163.150(1). The statutes at issue can and should be read together so as to give meaning to both and to carry out the state's choice in enacting them.

Defendant also argues here that ORS 137.013 does not authorize the admission of the evidence in this case because "it does not allow the family of the victim to testify about the impact of the crime upon them or other family

members. It allows only an expression of the 'impact of the crime on the victim.' " The definition of victim, however, "includes, in the case of a homicide * * *, a member of the immediate family of the decedent." ORS 131.007. Further, it would be ludicrous to read this statute to mean that if the victim is killed, there is no right under ORS 137.013 to express views on the impact of the crime. The text of the statute is broadly worded, allowing the expression of "any views concerning the crime," and does not support defendant's argument.

For all of the above reasons, I would hold that the victim impact testimony here was admissible, and I would affirm the defendant's sentence. I respectfully dissent.