Argued and submitted May 6, convictions affirmed; sentence vacated; remanded
for resentencing September 15, 1999

# STATE OF OREGON,
*Respondent,*

*v.*

# ANDREW SCOTT METZ,
*Appellant.*

## (91-1287; CA A98686)

986 P2d 714

Peter Gartlan, Deputy Public Defender, argued the cause for appellant. On the brief were David E. Groom, Public Defender, and Diane E. Alessi, Deputy Public Defender.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy

Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Janet A. Metcalf, Assistant Attorney General.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

Defendant appeals from a conviction for two counts of aggravated murder. ORS 163.095. In the first penalty-phase jury proceeding, defendant was sentenced to life imprisonment without the possibility of parole. In *State v. Metz*, 131 Or App 706, 887 P2d 795 (1994), *rev den* 323 Or 483 (1996), we remanded for a new penalty-phase proceeding, which again resulted in a sentence of life imprisonment without the possibility of parole. On appeal, defendant seeks vacation of his sentence and remand for a new penalty-phase jury proceeding. For the reasons set forth below, we remand for resentencing.

Because the jury found defendant guilty, we review the evidence in the light most favorable to the state. *State v. McDonnell*, 313 Or 478, 480, 837 P2d 941 (1992). On the evening of September 8, 1991, Duncan and Ellen McKinnon were staying at the Oceanview Resort in Seaside, Oregon. Their daughter Thomasina and her fiancé, William Hammond, had a room across the hall. At about 10:30 p.m., Thomasina and Hammond heard noises and went outside. Defendant was in the hallway with blood on his face, asking for a Band-Aid. Defendant then ran away. Thomasina then looked through the window into her parents' room and saw her father lying in a pool of blood, calling for help.

Also around 10:30 p.m., William Prows and three others were in the room next to the McKinnon's room when they heard a fight in the next room. They went to the McKinnon's door to ask if everything was alright. A voice answered that everything was okay, but the noise resumed a few moments later. Shortly thereafter, defendant knocked on their door and said he had cut himself or his grandmother had cut herself, and asked if they had any bandages. Defendant then ran away and was pursued by Prows and Hammond. Prows saw defendant pull out a knife. Neither Prows nor Hammond was able to catch defendant.

At about 10:45 p.m., defendant came to the house of an acquaintance, Bushman, said he had had a fight with his mother and asked to stay the night. He seemed out of breath.

Bushman refused to let him stay but let him use the bathroom. He came out of the bathroom with his jacket wrapped around his hand. After he left, Bushman called the police because she believed something was wrong. A police officer found a 12-inch knife, which did not belong to Bushman, under her bathroom sink and also found a freshly blood-stained jacket in the back yard. At about 1:30 a.m. on September 9, a police officer apprehended defendant about a mile from Seaside. Defendant first denied that he had committed the crimes, then later confessed.

Both Duncan and Ellen McKinnon died from stab wounds. Blood on the jacket found in Bushman's yard and also on the pants taken from defendant after his arrest was consistent with the blood of Duncan and Ellen McKinnon. Several pieces of Ellen McKinnon's jewelry eventually were recovered from defendant's mother.

Defendant was convicted of the aggravated murder of Duncan and Ellen McKinnon. A separate penalty-phase proceeding was held to determine whether defendant should receive a sentence of death, life imprisonment without the possibility of parole, or life imprisonment with the possibility of parole. In that proceeding, the state introduced "victim impact" evidence. On appeal, we held that victim impact evidence was not relevant evidence for the jury to consider in answering the question whether defendant should receive a sentence of death. ORS 163.150 (1991); *Metz*, 131 Or App at 715-16. On remand, the state argued, and the trial court found, that the newly enacted 1995 version of ORS 163.150 specifically allowed for the admission of victim impact evidence in the penalty phase of an aggravated murder case and should therefore apply in defendant's new penalty-phase trial. Alternatively, the trial court ruled that the victim impact evidence was admissible under ORS 137.013.

At the sentencing proceeding, the state offered the following victim impact evidence. William Hammond testified that the victims had been extremely gentle people and that Mr. McKinnon had a good sense of humor. Thomasina McKinnon-Hammond testified that her parents were very gentle people, that her mother had been a stay-at-home mom who was always there for her, and that her father took her for

bike rides and swimming when she was a child. She testified that she was very close to her parents, and they were in regular contact by writing and telephone. Michael McKinnon, the victims' son, testified that he received a call around midnight on September 8, 1991, at his home in California, informing him that his mother had been attacked and killed and that his father was in surgery. He chartered a plane but, by the time he reached Oregon, his father had died. He testified that he had seen his parents several weeks before the murders and that his mother was looking forward to visiting the Oregon coast because it was so beautiful. He testified about his father's military service and career and indicated that his mother loved to draw and to garden. He testified that his parents were established in their midwestern community and their church. He testified that his parents were truly trustworthy people.

Also at sentencing, defendant called, as a character witness, Kitzman, a former inmate with whom he had been incarcerated after his arrest for the crimes at issue here. On direct examination, Kitzman testified that he had been falsely convicted but that, after his convictions were overturned on appeal, the charges against him were dropped. On cross-examination, over defendant's objection, the prosecutor brought out that Kitzman had been convicted by jury verdict on numerous counts of rape, sexual abuse and sexual penetration.

The penalty-phase jury determined that defendant should be sentenced to life imprisonment without the possibility of parole. On appeal, defendant makes two assignments of error, one relating to the cross-examination of his character witness and the other relating to the trial court's ruling that ORS 163.150 (1995) permitted the admission of victim impact evidence during the penalty phase. We do not reach defendant's arguments pertaining to the witness's cross-examination because we find defendant's other assignment of error to be dispositive.

As noted above, defendant was resentenced after this court determined that victim impact evidence was improperly admitted during the first penalty-phase proceeding. On appeal, defendant challenges the use of victim impact

evidence at resentencing on several grounds. First, defendant argues that the trial court's ruling to admit victim impact evidence violated this court's instructions on remand. Second, defendant argues that our previous decision concerning the admissibility of victim impact evidence is the "law of the case" and that the trial court therefore erred in ruling the evidence admissible when that question already had been decided by a higher court. Finally, defendant argues that applying ORS 163.150 (1995) to allow victim impact evidence to be used in the penalty phase violates the *ex post facto* provisions of the state and federal constitutions.

■      Defendant's argument that the trial court violated this court's instructions on remand and his law of the case argument present basically the same issue, and we therefore address them together. The relevant portion of our disposition of the previous appeal simply stated "remanded for resentencing." 131 Or App at 720. There is nothing inherent in the wording of our remand that would preclude a trial court from applying the laws of evidence in effect at the time of the resentencing. *Cf. State v. Coburn*, 146 Or App 653, 934 P2d 579 (1997) (unlike a sentencing error determined on direct appeal, sentencing error determined on post-conviction did not result in a blank slate on sentencing issues but only for correction of the original error).

■      Defendant's argument that this court's previous decision precluded admission of victim impact evidence on remand fits more readily within the "law of the case" doctrine:

"The doctrine of 'law of the case' precludes this court from reconsidering [an issue decided in a previous appeal]:

" 'It is a general principle of law and one well recognized in this state that when a ruling or decision has been once made in a particular case by an appellate court, while it may be overruled in other cases, it is binding and conclusive both upon the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal or other proceeding for review.' " *State v. Pratt*, 316 Or 561, 569, 853 P2d 827, *cert den* 510 US 969 (1993), *quoting Simmons v. Wash. F. N. Ins. Co.*, 140 Or 164, 13 P2d 366 (1932).

It is clear that the "law of the case" doctrine would preclude this court from reconsidering in the present case whether victim impact evidence was relevant and admissible under ORS 163.150 (1991). However, defendant cites no authority for the proposition that the law of the case doctrine precludes consideration of whether victim impact evidence is nonetheless admissible under ORS 163.150 (1995). This appears to be a matter of first impression under Oregon law, *i.e.*, whether the law of the case doctrine bars application of a new version of a statute after an appeal that concerned the older version of the same statute. A review of persuasive authority from other jurisdictions, however, convinces us that courts that have considered this question have concluded that the law of the case doctrine does not preclude application of a new version of a statute on remand. *See, e.g., Memphis Pub. Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 SW2d 303 (Tenn 1998) (there is an exception to the law of the case doctrine if there has been a change in the controlling law between the first and second appeal); *Webb v. Smith*, 224 Mich App 203, 568 NW2d 378 (1997) (same); *Crespin v. Coye*, 27 Cal 4th 700, 34 Cal Rptr 2d 10 (1994) (same).

The law of the case doctrine is essentially one of judicial economy and judicial discretion. Defendant offers no cogent reason why this doctrine should be extended to preclude courts from recognizing and applying newly enacted laws, and we are aware of none. We conclude that the law of the case doctrine did not preclude the trial court from applying ORS 163.150 (1995) to allow victim impact evidence at sentencing.

The state argues on appeal that, regardless of ORS 163.150 (1995), the evidence was properly admitted under ORS 137.013. We rejected that argument in our previous decision, *Metz*, 131 Or App at 718, and see no need to revisit our conclusion here.

■ The next question is whether the trial court erred in admitting victim impact evidence under the current version of ORS 163.150. Defendant argues that application of the

1995 version of that statute violated the *ex post facto* provisions of the state and federal constitutions. As an initial matter, the state argues that we should not consider defendant's *ex post facto* arguments because they are not sufficiently preserved. The state relies on *State v. Hayward*, 327 Or 397, 963 P2d 667 (1998), in which the Oregon Supreme Court refused to consider the defendant's *ex post facto* argument pertaining to victim impact evidence on the ground that the defendant had not preserved any error. In *Hayward*, the defendant made a generalized objection to the admission of any victim impact evidence at the beginning of the penalty phase. *Id.* at 412-13. The court noted that some of the victim impact evidence at issue in that case was properly admitted identification evidence from the guilt phase of the trial and that the

> "defendant failed to alert the trial court, in any appropriate way that would have allowed the trial court to respond, that defendant objected to the introduction of victim impact evidence should there be a penalty phase, or that he wanted the court to limit the jury's consideration of [that testimony]." *Id.* at 414.

     *Hayward* is not on point. The defendant's error in *Hayward* was that he objected to evidence used in the penalty phase that he had failed to object to during the guilt phase. The court stated:

> "[W]e conclude that, when defendant asserted his objection to the introduction of victim impact evidence, *the record already included such evidence* and that defendant's generic objection for the first time at the beginning of the penalty phase was insufficient to preserve his *ex post facto* argument." *Id.* (emphasis added).

Here, by comparison, the state sought a ruling before the penalty phase began regarding whether victim impact evidence would be admissible under ORS 163.150(1) (1995), and, in a prepenalty-phase opinion letter, the trial court ruled that it was. Defendant argued against the admission of the evidence on the same grounds that he raises in this court. The trial court was fully apprised of the nature of defendant's arguments against the admission of this evidence well before

the evidence was put before the jury. Moreover, the court specifically allowed defense counsel to make a "standing objection" to the use of this evidence throughout the penalty-phase proceeding. The Oregon Supreme Court has stated that

> "the rules pertaining to preservation of error in trial courts are intended to advance goals such as ensuring that the positions of the parties are presented clearly to the initial tribunal and that parties are not taken by surprise, misled, or denied opportunities to meet an argument." *Davis v. O'Brien*, 320 Or 729, 373, 891 P2d 1307 (1995).

Those goals have been met here. We conclude that defendant's arguments against the use of victim impact evidence in the penalty phase of this aggravated murder proceeding are preserved.

■ ■   We first examine defendant's state constitutional arguments. *State v. Kennedy*, 295 Or 260, 666 P2d 1316 (1983). Article I, section 21, of the Oregon Constitution, provides, in part, that "[n]o ex post facto law * * * shall ever be passed[.]" In general, the *ex post facto* provision prohibits the state from punishing acts that were legal at the time that they occurred, from imposing increased punishments for such acts, and from depriving defendants of defenses for such acts. *State v. Cookman*, 324 Or 19, 26, 920 P2d 1086 (1996) (citing cases). In *Cookman*, the court went on to note that Article I, section 21, was based on a provision of the Indiana Constitution that had been interpreted as follows:

> " ' The words *ex post facto* have a definite, technical signification. The plain and obvious meaning of this prohibition is, that the Legislature shall not pass any law, after a fact done by any citizen, which shall have relation to that fact, so as to punish that which was innocent when done; or to add to the punishment of that which was criminal; or to increase the malignity of a crime; *or to retrench the rules of evidence, so as to make conviction more easy.*' *Strong v. The State*, 1 Blackf 193, 196 (1822) (citing *Calder v. Bull*, 3 US (3 Dall) 386, 1 L Ed 648 (1778), among other authorities)." *Cookman*, 324 Or at 28 (emphasis added).

The *Cookman* court, however, went on to note:

> "It is readily obvious that those Indiana decisions do not add much to this court's previously announced understanding of Article I, section 21, discussed above. *But see [State v.] Gallant*, 307 Or [152,] 155, [764 P2d 920 (1988)] (application of a uniform rule of evidence of general application that 'did not affect a substantive right' in a trial for a crime committed before the rule was adopted does not violate Article I, section 21)." [1] *Cookman*, 324 Or at 29.

■  The question before us is whether the legislature's revision of ORS 163.150 (1995), which made victim impact evidence relevant to the jury's determination of defendant's sentence, impermissibly "retrench[es] the rules of evidence" in a manner that affects defendant's substantive rights or whether it is simply an amendment to a uniform rule of evidence of general application that "did not affect a substantive right." *Cookman*, 324 Or at 28. We understand *Gallant*, as later interpreted by the court in *Cookman*, to stand for the proposition that a general change in evidentiary law that affects the way something is proved, but that does not affect the nature of what is proved, does not retrench a rule of evidence in a way that affects substantive rights and thus does not violate the *ex post facto* provision of Article I, section 21.

To address this question, we first assess the differences between the 1991 and 1995 versions of ORS 163.150 by turning to our previous decision in this case and to the Oregon Supreme Court's decision in *State v. Guzek*, 322 Or 245, 906 P2d 272 (1995). In our previous opinion, we held that victim impact evidence was inadmissible under ORS 163.150(2)(a) (1991):

> "Upon the conclusion of the presentation of the evidence, the court shall also instruct the jury that if it reaches

---

[1] In *Gallant*, the court stated:

"Generally speaking, *ex post facto* laws punish acts that were legal at the time they occurred, change the punishment for those acts, or deprive the defendant of a defense for those acts. The amendment to OEC 609 did not create a new crime. It did not affect a substantive right of the defendant and it did not change the proof necessary to establish a crime. Under these circumstances, we hold that applying the new provision in this case did not amount to imposing ex post facto law." 307 Or at 155.

a negative finding on any issue under subsection (1)(b) of this section [pertaining to the death penalty], the trial court shall sentence the defendant to life imprisonment without the possibility of release or parole, * * * *unless 10 or more members of the jury further find that there are sufficient mitigating circumstances to warrant life imprisonment*, in which case the trial court shall sentence the defendant to life imprisonment as described in ORS 163.105(1)(c)." *State v. Metz*, 131 Or App at 719, *quoting* ORS 136.150(2)(a) (1991) (emphasis in *Metz*).

In *Metz*, we noted that a jury would not reach the question posed by ORS 163.150(2)(a) unless it had "acquitted" the defendant of a death sentence. We stated:

"[T]he legislature adopted the fourth question [*i.e.,* should the defendant receive a death sentence or some lesser sentence] for a specific purpose, *i.e.,* to ensure consideration of *evidence pertaining to mitigation, with particular reference to a defendant's character, background or crime.* The state is, of course, entitled to specifically controvert mitigating evidence adduced by a defendant. However, the legislature did not intend to throw the penalty phase of capital cases open to consideration of *any* evidence that might sway the jury in one direction or the other." *Id.* at 716 (emphasis in original).

We further noted that the "fifth question," *i.e.,* whether a defendant should receive a sentence of life imprisonment with or without the possibility of parole if the jury gave a negative response to the fourth question, was part of an integrated penalty-phase process, and "only evidence admissible with respect to the first four questions is properly before the jury in answering the fifth." *Id.* at 719 n 10.

In *Guzek*, the Oregon Supreme Court considered a similar question under ORS 163.150(1)(b) (1989). 322 Or at 248. In *Guzek*, the defendant initially had been sentenced to death in 1988 and that sentence had been overturned based on *State v. Wagner*, 309 Or 5, 786 P2d 93, *cert den* 498 US 879 (1990). *State v. Guzek*, 310 Or 299, 797 P2d 1031 (1990). Before the second penalty-phase proceeding was held, the United States Supreme Court ruled that the United States Constitution does not bar the admission of victim impact evidence at capital sentencing. *Payne v. Tennessee*, 501 US 808,

111 S Ct 2597, 115 L Ed 2d 720 (1991). The trial court, on remand in *Guzek*, held that victim impact evidence was admissible against the defendant in the penalty-phase proceeding. *Guzek*, 322 Or at 248. The jury again sentenced the defendant to death, and the defendant again appealed. The Oregon Supreme Court held that, based on the text, context and legislative history of ORS 163.150(1)(b)(D) (1989),[2] *"only* evidence relating to the existence of mitigating circumstances is relevant[.]" *Guzek*, 322 Or at 245 (emphasis in original).

In short, before the 1995 amendments to ORS 163.150, victim impact evidence was not relevant to a jury's determination of the "fourth question" of whether a defendant should receive a sentence of death, or to the contingent "fifth question" of whether a defendant should receive life imprisonment with or without the possibility of parole.

In 1995, the legislature amended ORS 163.150 in a manner that affects both the "fourth" and "fifth" questions in an aggravated murder penalty-phase proceeding. ORS 163.150(1)(a) was amended to provide, in part:

> "In the [aggravated murder penalty-phase] proceeding, evidence may be presented as to any matter that the court deems relevant to sentence including, but not limited to, victim impact evidence relating to the personal characteristics of the victim or the impact of the crime on the victim's family and any aggravating or mitigating evidence relevant to the issue in paragraph (b)(D) of this subsection[, *i.e.,* whether the defendant should receive a death sentence] * * *."

The 1995 Legislature did not alter the phrasing of ORS 163.150(2)(a), which makes reference only to mitigating evidence. Defendant nevertheless asserts, and we agree, that the legislature's change to ORS 163.150(1)(a) making aggravating evidence, including victim impact evidence, relevant to the "fourth question" also unquestionably affects the "fifth

---

[2] ORS 163.150(1)(b)(D) (1989) provided:

"If constitutionally required, considering the extent to which the defendant's character and background, and the circumstances of the offense may reduce the defendant's moral culpability or blameworthiness for the crime, whether a sentence of death should be imposed."

question." *See Metz*, 131 Or App at 719 n 10 (same evidence is relevant to fourth and fifth questions).

In sum, under the 1991 version of the statute, the penalty-phase jury on remand in the present case would have considered only mitigating evidence in determining whether defendant should receive a sentence of life imprisonment with or without the possibility of parole. Under the 1995 version of the statute, the penalty-phase jury on remand was permitted to consider mitigating evidence but also was permitted to consider aggravating evidence, including victim impact evidence, in determining whether defendant should receive a sentence of life imprisonment with or without the possibility of parole. That change, although ostensibly merely a change in a rule of evidence, actually changed the fundamental nature of the question the jury was to answer. Before the change was made, the only relevant evidence the jury was to consider in making this determination was mitigating evidence; after the change, the jury was allowed to consider aggravating evidence as well. This type of change in a rule of evidence differs significantly from the change at issue in *Gallant*, which concerned OEC 609(1), an evidence rule of general applicability concerning attacking the credibility of witnesses through use of past convictions. The *Gallant* court noted that the amendment to OEC 609 "did not affect a substantive right of the defendant and it did not change the proof necessary to establish a crime." 307 Or at 155.

■ Here, by comparison, under the 1991 version of ORS 163.150, defendant had a substantive right to have a jury decide the "fifth question" based solely on mitigating evidence; under the 1995 version of ORS 163.150, defendant lost that right.[3] Here, also, the change in ORS 163.150 changed the "proof necessary to establish" the proper answer to the "fifth question"—under the 1991 version, the proof consisted solely of mitigating evidence. Under the 1995 version, the proof consisted of both mitigating and aggravating evidence. The net effect of the amendment to ORS 163.150 permitting

---

[3] Defendant made no argument to the trial court, and makes no argument to this court, that victim impact evidence is relevant only to the "fourth question" and not to the "fifth question" under ORS 163.150 (1995).

aggravating evidence, including victim impact evidence, at aggravated murder penalty-phase proceedings, was to make it possible for a jury to impose a harsher sentence than previously could have been imposed based solely on evidence that was *not relevant* to the inquiry at all under the previous version of the statute. We conclude that such a fundamental change regarding what evidence may be relevant to the issue before the jury runs afoul of the *ex post facto* provision of Article I, section 21, of the Oregon Constitution. For the same reasons that were stated in our previous decision, *Metz*, 131 Or App at 720, we also conclude that the error in admitting the victim impact evidence here was not harmless.

Convictions affirmed; sentence vacated; remanded for resentencing.