**Rickie Wayne SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 71794.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 21, 1996.

Rehearing Denied April 3, 1996.

Henry K. Oncken, Houston, for appellant.

Karen A. Clark, Assist. Dist. Atty., Houston, Robert A. Huttash, State's Atty., Austin, for the State.

## OPINION

BAIRD, Judge.

Appellant was convicted of capital murder in November of 1993. Tex.Penal Code Ann. § 19.03(a)(2). Pursuant to the jury's answers to the punishment issues of Tex.Code Crim.Proc. art. 37.071 §§ 2(b) and (e), the trial judge sentenced appellant to death. *Id.* at § 2(g). Appeal to this Court is automatic. *Id.* at § 2(h). We will affirm.

[Editor's Note: Only Part II of the opinion is designated for publication.]

### II.

■ In his fifth point of error appellant contends the trial judge erred in allowing evidence at the punishment stage of trial of the victim's good character, her relationship with the mentally handicapped students she taught and the effect of the victim's death upon the students, and the victim's work ethic. Appellant claims the evidence was not relevant to the punishment issues prescribed by our capital sentencing scheme and was offered solely to inflame the jury.

### A.

Prior to trial, appellant filed a motion in limine seeking to bar the admission of testimony regarding the personal characteristics of the victim or evidence of the emotional impact her death had on friends and family. During the punishment phase of trial, the State called the victim's co-worker, Mariana Goines, as a witness. Appellant approached the bench and requested a hearing regarding the admissibility of the testimony pursuant to his motion in limine. After the testimony

was proffered, appellant objected that the evidence was not relevant and was more prejudicial than probative. The objections were overruled.

Goines testified the victim taught special education type students; that she was very dedicated and hard working to the point of learning to speak the Spanish language for her Spanish-speaking students; and that the victim spent a lot of her own money on her students. Goines further testified that the students were very attached to the victim and were greatly affected by her death.

The State also called the victim's sister as a punishment witness. Again appellant objected to the testimony and again the trial judge overruled his objections. The witness testified that the victim was very artistic and musically inclined and that she was an animal lover and wanted to work with animals. She also testified that the victim had received a degree in special education and a master's degree in counseling and that the victim had been a member of the National Guard Reserves for eleven years.

### B.

In *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and *South Carolina v. Gathers,* 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989), the Supreme Court held the Eighth Amendment prohibited a capital sentencing jury from considering evidence relating to the personal characteristics of the victim, and the emotional impact of the crime on the victim's family, to the extent that it did not directly relate to the circumstances of the offense.[2]

2. In *Booth,* the Court held the introduction of a victim impact statement in a capital sentencing hearing violated the Eighth Amendment because such evidence was irrelevant to the defendant's individual characteristics and the circumstances of the crime. *Id.,* 482 U.S. 496, 508, 107 S.Ct. 2529, 2536 (1987). The Court reasoned:

> While the full range of foreseeable consequences of a defendant's actions may be relevant in other criminal and civil contexts, we cannot agree that it is relevant in the unique circumstance of a capital sentencing hearing. In such a case, it is the function of the sentencing jury to "express the conscience of the community on the ultimate question of life or death." *Witherspoon v. Illinois,* 391 U.S. 510,

519, 88 S.Ct. 1770, 1775, 20 L.Ed.2d 776 (1968). When carrying out this task the jury is required to focus on the defendant as a "uniquely individual human bein[g]." *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 2990, 49 L.Ed.2d 944 (1976) (plurality opinion of Steward, Powell, and Stevens, JJ.) The focus of a [victim impact statement], however, is not on the defendant, but on the character and reputation of the victim and the effect on his family. These factors may be wholly unrelated to the blameworthiness of a particular defendant. As our cases have shown, the defendant often will not know the victim, and therefore will have no knowledge about the existence or characteristics of the victim's family. Moreover, defendants rarely

In *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the Court re-examined these holdings.[3] In re-evaluating the exclusion of victim impact evidence, the Court rejected the two premises underlying *Booth*: first, that victim impact evidence is irrelevant to a defendant's moral culpability for the offense; and, second, that only evidence of moral culpability is relevant to a capital sentencing decision. *Payne*, 501 U.S. at 818–820, 111 S.Ct. at 2605. The Court noted that since the late Eighteenth Century, penal theory has increasingly focused upon the amount of harm as a measure of the crime's severity and consequent punishment. *Id.*, 501 U.S. at 818–822, 111 S.Ct. at 2605–2606. The Court further noted a growing acceptance in American jurisprudence of consideration of the harm resulting from an offense as a relevant factor to sentencing. *Id.*, 501 U.S. at 820–822, 111 S.Ct. at 2606 (citing S. Wheeler, K. Mann, and A. Sarat, *Sitting in Judgment: The Sentencing of White–Collar Criminals* 567 (1988)).

In reviewing *Booth*'s exclusion of victim impact evidence, the Court explained *Booth* misread the language from *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), which directed the jury's deliberations to a defendant's personal characteristics, as a limitation upon the evidence which may be considered at capital sentencing. *Payne*, 501 U.S. at 820–824, 111 S.Ct. at 2606–2607. The Court explained however, that "the language quoted from *Woodson* in the *Booth* opinion was not intended to describe a class of evidence that *could not* be received, but a class of evidence which *must* be received. *Payne*, 501 U.S. at 822–824, 111 S.Ct. at 2607 (emphasis in original). Thus, the Court criticized *Booth* as creating an unbalanced perspective of the offense by highlighting the defendant's personal characteristics while excluding the victim's personal characteristics, or the effects of the offense upon others. *Payne*, 501 U.S. at 822–824, 111 S.Ct. at 2607.

The Court examined those limitations precluding the imposition of the death penalty under the Eighth Amendment and determined that victim impact evidence falls outside these constitutional limitations.[4] 501

---

select their victims based on whether the murder will have an effect on anyone other than the person murdered. Allowing the jury to rely on a [victim impact statement] therefore could result in imposing the death sentence because of factors about which the defendant was unaware, and that were irrelevant to the decision to kill. This evidence thus could divert the jury's attention away from the defendant's background and record, and the circumstances of the crime.

*Booth*, 482 U.S. at 504–505, 107 S.Ct. at 2533–2534. Thus, the Court explained that victim impact evidence could "serve no other purpose than to inflame the jury and divert it from deciding the case on the relevant evidence concerning the crime and the defendant." *Id.*, 482 U.S. at 509, 107 S.Ct. at 2536.

In *Gathers*, the Court relied upon *Booth, supra,* to hold that the prosecutor's comments on the personal characteristics of the victim during the State's closing argument at the capital sentencing hearing were improper because they did not relate to the defendant's personal characteristics or the circumstances of the crime. *Gathers*, 490 U.S. at 810–812, 109 S.Ct. at 2210–2211.

**3.** In the case of *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the defendant brutally and repeatedly stabbed Charisse Christopher, her two-year-old daughter, Lacie, and her three-year-old son, Nicholas. Only Nicholas survived. The defendant was convicted

of the first-degree murders of Charisse and Lacie and of assault with intent to kill Nicholas. *Id.* During the sentencing phase of trial, the defendant called his parents, his girlfriend, and a clinical psychologist to testify as to various mitigating aspects of appellant's background and character. *Id.* The State then called Charisse's mother (Nicholas' grandmother) to testify as to how Nicholas had been affected by the murders. *Id.* The jury subsequently sentenced the defendant to death. The Tennessee Supreme Court affirmed. *State v. Payne*, 791 S.W.2d 10 (1990). The United States Supreme Court granted certiorari to determine whether the Eighth Amendment prohibited a capital sentencing jury from considering evidence relating to the personal characteristics of the victim and the emotional impact of the crime on the victim's family.

**4.** The Court stated:

... Where the State imposes the death penalty for a particular crime, we have held that the Eighth Amendment imposes special limitation upon that process.

"First, there is a required threshold below which the death penalty cannot be imposed. In this context, the State must establish rational criteria that narrow the decisionmaker's judgment as to whether the circumstances of a particular defendant's case meet the threshold. Moreover, a societal consensus that the death penalty is disproportionate to a particular of-

U.S. at 824–826, 111 S.Ct. at 2608. The Court further stated that whether such evidence is relevant to capital sentencing lies within the State's discretion in enacting capital punishment procedures:

> We are now of the view that a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant. "[T]he State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family." *Booth*, 482 U.S., at 517, 107 S.Ct. at 2540 (White, J., dissenting).

*Payne*, 501 U.S. at 825, 111 S.Ct. at 2608. Thus, the Court held:

> ... if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on the subject, the Eighth Amendment erects no *per se* bar. A state may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated.

*Payne*, 501 U.S. at 827, 111 S.Ct. at 2609.

Since *Payne* eliminated the Eighth Amendment's *per se* bar to victim impact evidence at a capital sentencing hearing, and left the decision of whether to permit such evidence to the State's when enacting capital punishment procedures, the question in the instant case is whether the evidence presented was admissible under our capital sentencing scheme.

### C.

This Court has held that a trial judge has wide discretion in admitting or excluding evidence at the penalty phase of a capital murder trial. *Lane v. State*, 822 S.W.2d 35, 41 (Tex.Cr.App.1991). However, this discretion is limited to matters *relevant* to sentence. Tex.Code Crim.Proc.Ann. art. 37.071, § 2(a).[5] Our rules of evidence provide that evidence that is not relevant is inadmissible. Tex. R.Crim.Evid. 402. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex.R.Crim.Evid. 401. With these limits in mind, the parties then present evidence and, thereafter, the jurors are asked to answer two or three punishment issues. *See* Tex.Code Crim.Proc. art. 37.071 §§ 2(b) and (e). The answers to these issues determine whether the sentence will be death or confinement for life.

The first two questions focus purely on the defendant's own behavior:

> (b)(1) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

> (2) in cases in which the jury charge at the guilt or innocence stage permitted the jury to find the defendant guilty as a party under Sections 7.01 and 7.02, Penal Code, whether the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken.

*Payne*, 501 U.S. at 824, 111 S.Ct. at 2607–2608.

---

fense prevents a State from imposing the death penalty for that offense. Second, States cannot limit the sentencer's consideration of any relevant circumstances that could cause it to decline to impose the penalty. In this respect, the State cannot challenge the sentencer's discretion, but must allow it to consider any relevant information offered by the defendant." *McCleskey v. Kemp*, 481 U.S. 279, 305–306, 107 S.Ct. 1756, 1774–1775, 95 L.Ed.2d 262 (1987).

5. Specifically, the relevant portion of art. 37.071 § 2(A) provides:

> ... evidence may be presented by the state and the defendant or the defendant's counsel as to any matter that the court deem relevant to sentence, including evidence of the defendant's background or character or the circumstances that mitigate the imposition of the death penalty....

Although the third issue also focuses on the defendant, it is more global in scope.

> (e) Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of·life imprisonment rather than a death sentence be imposed.

Past this framework, no further guidance has been given by our Legislature or by the Texas Rules of Criminal Evidence as to exactly what evidence is "relevant" under our capital sentencing scheme. That guidance has come from the United States Supreme Court in the development of Eighth Amendment jurisprudence. *See generally Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).

### D.

Because this is a case of first impression, we look to the decisions of other states for possible guidance. The Court of Appeals of Oregon addressed the issue of the admissibility of victim impact evidence in relation to its capital sentencing scheme in *State v. Metz*, 131 Or.App. 706, 887 P.2d 795 (1994). The Oregon scheme is, in many ways, identical to the Texas scheme of art. 37.071.[6] Oregon law provides that in the sentencing phase of an aggravated murder case "evidence may be presented as to any matter that the court deems relevant to sentence[.]" *Metz, supra.* And "relevant evidence" means:

> [E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action

more probable or less probable than it would be without the evidence.

Oregon Evidence Code § 40.150, Rule 401.

Oregon law also provides that:

(b) Upon the conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:

> (A) Whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that death of the deceased or another would result;

> (B) Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society;

> (C) If raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased; and

> (D) *Whether the defendant should receive a death sentence.*

> \*     \*     \*     \*     \*     \*

(f) If the jury returns an affirmative finding to each issue ... the trial judge shall sentence the defendant to death.

*Metz, supra.*[7]

In *Metz*, the State contended that victim impact evidence was relevant to the issue in paragraph (b)(D) because the prosecution was "entitled to produce evidence that makes it less probable that one or more jurors will answer the fourth question 'no.'"

The Oregon Court noted that the fourth question had been added to the State's scheme in response to *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), which held that a jury "must be able to consider and give effect to any mitigating

---

**6.** In fact, the Oregon capital sentencing scheme was taken from the Texas capital sentencing scheme and modified to fulfill the dictates of *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). *State v. Stevens*, 319 Or. 573, 879 P.2d 162 (1994).

**7.** ORS 163.150(1)(c) further provides:

(c)(A) In determining the issues ... the court shall instruct the jury to consider any mitigating circumstances offered in evidence, including but not limited to the defendant's age, the extent and

severity of the defendant's prior criminal conduct and the extent of the mental and emotional pressure under which the defendant was acting at the time the offense was committed.

(B) In determining the issue in paragraph (b)(D) of this subsection, the court shall instruct the jury to answer the question "no" if one or more of the jurors find there is any aspect of the defendant's character or background, or any circumstances of the offense, that one or more of the jurors believe would justify a sentence less than death.

evidence relevant to a defendant's background and character or the circumstances of the crime." The Oregon court commented that:

> The state is, of course, entitled to specifically controvert mitigating evidence adduced by a defendant. However, the legislature did not intend to throw the penalty phase of capital cases open to consideration of *any* evidence that might sway the jury in one direction or the other.
>
> *We particularly note that there is no reference in the legislative history to victim impact evidence. That absence of discussion is unsurprising, because, at the time the legislature developed the current language of [the statute], victim impact evidence was not constitutionally admissible in death penalty proceedings. Booth v. Maryland, supra,* 482 U.S. at 509, 107 S.Ct. at 2536. *The Supreme Court reversed its position on that issue in Payne v. Tennessee, supra, but [the statute] has not been amended since that time.*

*Metz,* 887 P.2d at 801. Given this history, the Oregon court concluded that victim impact evidence was not, and could not have been on the minds of the legislators who enacted the fourth question. *Id.* Thus, victim impact evidence could not reasonably be viewed as falling within the categories of evidence the legislators had in mind as pertaining to the mitigation question and was therefore immaterial to that question. *Id.*

Additionally, the Court held that victim impact evidence was not relevant to resolve the remaining punishment issues. The Court stated:

> ... The subsequent impact of the crime on the victim's family, however tragic and devastating, is not relevant to whether defendant's conduct was deliberate, [citation omitted]; whether defendant will constitute a continuing threat to society, [citation omitted]; or whether defendant was reasonably responding to provocation....

Consequently, the admission of victim impact evidence at the sentencing phase was error. *Metz,* 887 P.2d at 802.

In Utah, "evidence ... relevant to sentence" is also admissible in homicide cases. The definition of "relevant evidence" is the same in Utah as in Oregon and Texas. In *State v. Carter,* 888 P.2d 629, 651 (Utah), *cert. denied,* — U.S. —, 116 S.Ct. 163, 133 L.Ed.2d 105 (1995), the Utah Supreme Court noted that the purpose of the sentencing phase of a capital trial is "to acquire a thorough acquaintance with the character and history of the person before the court." *Id.* at 652. And,

> permitting the State to introduce victim impact evidence shifts the focus of the proceeding from the defendant to the victim and the effect of the murder on the victim's family and community. This shift adds nothing to the culpability analysis and is fraught with danger. [Citation omitted.] Aside from causing the jury to lose sight of its immediate task, the shift suggests that some victims are more valuable to society and/or deserve more sympathy than others. Further, a judge or jury considering victim impact evidence is more likely to empathize with the family's tragedy, perhaps asking, "What if I, or a member of my family, were the murder victim?" Such empathy dangerously increases the possibility of improper passion or prejudice.

*Id.* The Utah Court thereafter held that victim impact evidence simply has no probative force in the sentencing context.

> Such evidence does not make it more or less likely that a defendant deserves the death penalty. In our society, individuals are of equal value and must be treated that way. We will not tempt sentencing authorities to distinguish among victims—to find one person's death more or less deserving of retribution merely because he or she was held in higher or lower regard by family and peers. Such a scheme draws lines in our society that we think should not be drawn. The worth of a human life is inestimable, and we do not condemn those who take life more or less harshly because of the perceived value or quality of the life taken. [Citation omitted.] Indeed, society is probably incapable of evenhandedness in such judgments.

*Id.*

### E.

We now turn our analysis to our capital sentencing scheme. With regard to the first

issue submitted to the jury pursuant to art. 37.071, § 2(b)(1), evidence concerning the personal characteristics of the deceased victim and the relationship she had with her students would not have any relevance whatsoever. Evidence of the personal qualities of a victim or her relationship to the community such as that which was offered in the instant case does not have a tendency to make more or less probable whether appellant will constitute a continuing threat to society. Furthermore, it has long been the law in Texas that evidence of a deceased's good and peaceful character is not admissible unless and until that character is placed in issue by the defendant. *Armstrong v. State,* 718 S.W.2d 686, 697 (Tex.Cr.App.1985).

We now turn to whether victim impact evidence admitted is relevant to the "*Penry* issue." Art. 37.071, § 2(e). As with the Oregon statute, art. 37.071, § 2(e) was enacted *before Payne* was decided.[8] Thus, at time of its enactment, the Eighth Amendment prohibited victim impact evidence. *Booth,* 482 U.S. 496, 107 S.Ct. 2529. Consequently, the Legislature could not have intended for victim impact evidence to be within the class of "evidence relevant to sentence" under art. 37.071 § 2(a). *See, Metz, supra.*[9] Furthermore, the only possible way victim impact evidence of the sort introduced here would make the issue of appellant's deathworthiness more or less probable would be if the jury engaged in some comparative analysis of the worth of the victim. This is precisely the sort of use of victim impact evidence that the Utah Supreme Court chose to avoid. *See, Carter, supra.* Furthermore, even the United States Supreme Court stated in *Payne* that:

> As a general matter, however, victim impact evidence is not offered to encourage comparative judgements of this kind—for instance, that the killer of a hardworking, devoted parent deserves the death penalty, but that the murderer of a reprobate does not. It is designed to show instead *each* victim's "uniqueness as an individual human being," whatever the jury might think the loss to the community resulting from his death might be.

*Payne,* 501 U.S. at 823, 111 S.Ct. at 2607. While this sort of good character evidence of the victim as presented in the instant case might be admissible in some form of rebuttal context, such is not the situation in the instant case.

Accordingly, we hold art. 37.071 does not permit the admission of victim impact evidence and such is inadmissible as a matter of law to the extent it is not directly related to the circumstances of the offense or necessary for rebuttal.[10] Consequently, the trial judge erred in allowing this testimony of Goines and the victim's sister.

### F.

■ However, this does not end our analysis. Having concluded that the trial judge erred in admitting victim impact evidence in the penalty phase of appellant's trial, we must consider whether that error was harmless. Tex.R.App.Proc. 81(b)(2). Unless we can determine beyond a reasonable doubt that the error made no contribution to the

---

**8.** While the statute did not become effective until September 1, 1991, it was passed by both the House and the Senate in May, 1991, and filed on June 16, 1991. *Payne* was decided eleven days later on June 27, 1991.

**9.** Art. 37.071 has not been amended since *Payne* to provide for the admission of victim impact evidence. Nor has the Legislature amended the other statutes which deal with the impact of a crime on a victim.

Tex.Code of Crim.Proc. art. 42.03, § 1(b) provides:
The court shall permit a victim, close relative of a deceased victim, or guardian of a victim . . . to appear in person to present to the court a statement of the person's views about the

offense, the defendant, and the effect of the offense on the victim.
However, this article also provides that the statement shall be allowed only *after* sentence has been assessed and pronounced. This article was last amended in 1995.

Tex.Code Crim.Proc.Ann. art. 56.03 provides for a victim impact statement. Section (e) states that "Prior to the imposition of a sentence by the court" (emphasis added), "*the court,* if it has received a victim impact statement, shall consider the information provided in the statement." This article was last amended in 1995.

**10.** Even though the issue under art. 37.071 § 2(b)(2) was not included in the charge in the instant case, we hold victim impact evidence is not relevant to resolution of that issue.

conviction or to the punishment, the judgment must be reversed. *Id.* The record reveals that Goines was the third witness called by the State to testify at the punishment phase and the victim's sister was the sixth out of approximately seventeen total State's witnesses who were called to testify. The women's combined testimony to the jury comprises only about fifteen pages of a punishment phase record consisting of approximately 375 pages total.[11]

During the jury argument at punishment, the prosecutor reminded the jury fairly early that:

> You will remember what happened to [the victim]. You will remember who [the victim] is. A special education schoolteacher, a very loving person, a very giving person, who gave and gave all of her life to the extent that she even worked an extra job so that she would have the money not only to carry on her own personal needs, but to provide that little bit extra for those special education students that she had at Lamar Elementary school. This is a woman, like I say, there's no evidence she did anything but good.

Then he shifted his argument to focus on appellant. The prosecutor argued how appellant was always trying to shift blame to someone else and he revisited the evidence that the jury had heard. This included testimony regarding appellant's drug usage and evidence concerning appellant's extensive criminal background which began in his teen years with his involvement in a marijuana trade. The prosecutor also reviewed evidence presented to the jury about appellant's problems in the military and his criminal activities in at least six different states. The State further reviewed the testimony that appellant was in possession of a sawed-off shotgun when he was arrested for the instant offense and was apparently on his way to kill his estranged wife and reminded the jury of evidence they had heard concerning an attempted escape from prison after appellant was arrested for the instant offense. In short, the prosecutor focused a very bright spot light on appellant's own character and behavior and did not again refer to the objected-to victim impact evidence.

Appellant was then given the chance to make his argument on punishment which was followed by the summation argument of the State. Again the prosecutor focused almost exclusively on the circumstances of the crime and appellant's own character and behavior. With the exception of referring to Birky as "one of the best kinds of folks we have in society," and "[a] person who sacrificed a lot personally, financially, to do something that is very worthwhile in our community," the prosecutor did not again reference the victim impact evidence admitted in the punishment stage of trial.

Given the sparsity of the victim impact evidence; the fact that it was not unduly emphasized either in the testimony of witnesses in the punishment phase or in punishment arguments; and the overwhelming focus on the circumstances of the crime and appellant and his behavior, we conclude beyond a reasonable doubt that the evidence made no contribution to the conviction or to punishment. Tex.R.App.Proc. 81(b)(2). **Point of error five is overruled.**

The judgment of the trial court is affirmed.

McCORMICK, P.J., and WHITE and KELLER, JJ., concur in the result.

CLINTON, J., dissents with note: For reasons stated in my dissenting opinion in *Ford v. State,* 919 S.W.2d 107 (Tex.Cr.App. No. 71,760, this day decided), I am unable to agree the error found in Part II of the majority opinion is harmless; otherwise I join the judgment of the Court.

Only Part II of this opinion shall be published. The remainder of the opinion is not designated for publication.

OVERSTREET, Judge, concurring.

I concur in the result reached by the Court that appellant's conviction be affirmed. For the reasons advanced in *Ford v. State,* 919 S.W.2d 107 (Tex.Cr.App. delivered February

---

11. The total number of pages utilized for the statements of the State's witnesses is almost 200 of this 375 and the total number of pages utilized for testimony from defense witnesses is the remaining 175.

21, 1996) and the following reasons, I write to distinguish my beliefs.

The principal concern regarding the admissibility of victim impact evidence at the punishment stage of a capital murder trial is its relevancy regarding the special issues which the sentencing jury is required to answer. If the trial court can conclude that the impact of the murder on the victim's family is relevant to the jury's decision concerning whether a life or death sentence is more appropriate and that it has probative value which outweighs its prejudicial effect and that it is not unfairly prejudicial, then such evidence would be admissible under the rules of evidence. Tex.R.Crim.Evid. 401, 402 and 403.

I strongly believe that the character of the victim (victim character evidence), good or bad, is never admissible for the purpose of placing some sort of value (positive or negative) on the life of the victim. In so far that the opinion addresses those issues consistent with my stated belief, I join.

MANSFIELD, Judge, concurring.

I concur in the judgment of the Court. I write separately to disagree with the reasoning of the majority with respect to its disposition of appellant's point of error number five because I believe the issue presented is of great significance and is likely to be raised in other capital cases. The issue is whether, in light of *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) and Texas law, evidence as to the victim's good character may be introduced by the State at the punishment phase of a capital case in Texas. For the reasons presented below, I believe such evidence is admissible.

In *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) and *South Carolina v. Gathers,* 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989) the United States Supreme Court addressed the constitutionality of allowing the jury at the punishment phase of a capital trial to consider evidence as to the victim's good character. The Court, in *Booth,* held that so-called "victim impact evidence" was not admissible under the Eighth Amendment because such evidence was irrelevant as to the circum-

stances of the crime and as to the defendant's individual characteristics. "It is true that in certain cases some of the information contained in a Victim Impact Statement (VIS) will have been known to the defendant before he committed the offense. As we have recognized, a defendant's degree of knowledge of the probable consequences of his actions may increase his moral culpability in a constitutionally significant manner. See *Tison v. Arizona,* 481 U.S. 137, 157–158, 107 S.Ct. 1676, 1687–1688, 95 L.Ed.2d 127 (1987). We nevertheless find that because of the nature of the information contained in the VIS, it creates an impermissible risk that the capital sentencing decision be made in an arbitrary manner." *Booth v. Maryland,* 482 U.S. at 505, 107 S.Ct. at 2534.

The "victim impact statement" at issue in *Booth* included interviews with family members of the two murder victims. In these interviews, the family members discussed the devastating effects of the murders on their lives and expressed their hostility toward the perpetrators. "... the formal presentation of this information by the State can serve no other purpose than to inflame the jury and divert it from deciding the case on the relevant evidence concerning the crime and the defendant. As we have noted, any decision to impose the death sentence must 'be and appear to be, based on reason rather than caprice or emotion.' *Gardner v. Florida,* [430 U.S. 349, 358], 97 S.Ct. 1197, 1204 [51 L.Ed.2d 393] (1977). The admission of these emotionally charged opinions as to what conclusions the jury should draw from the evidence clearly is inconsistent with the reasoned decisionmaking we require in capital cases." *Booth v. Maryland,* 482 U.S. at 508–509, 107 S.Ct. at 2536.

In *Payne v. Tennessee, supra,* decided four years later, the Court reexamined its holdings in *Booth* and *Gathers.* In *Payne,* the defendant killed a woman and her two-year-old daughter. Her three-year-old son, Nicholas, was attacked and severely wounded at the same time, but survived. At the punishment phase, testimony as to the effect of the crimes on Nicholas, including the loss of his baby sister who, his grandmother testified, he cries for, was introduced.

The Court held that a state may allow for the introduction of victim impact evidence at the punishment phase of a capital murder trial. "The State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family.... By turning the victim into 'a faceless stranger at the penalty phase of a capital trial,' *Gathers* [490 U.S. 805], 109 S.Ct. 2207 (O'Connor, J., dissenting), *Booth* deprives the State of the full moral force of its evidence and may prevent the jury from having before it all the information necessary to determine the proper punishment for a first-degree murder." *Payne,* 501 U.S. at 825, 111 S.Ct. at 2608.

"We thus hold that if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated." *Payne,* 501 U.S. at 827, 111 S.Ct. at 2609.

As it is clear that there is no federal constitutional bar to the admission of victim impact evidence at the punishment phase of a capital murder trial, we must determine if such evidence is admissible under Texas law.

The Texas Legislature addressed the issue of victim impact evidence in a limited manner when it enacted Texas Code of Criminal Procedure, Article 56.03. Article 56.03 allows a victim of an offense, guardian of a victim or close relative of a victim to submit a victim impact statement to the court prior to imposition of sentence. The victim impact statement may describe the economic, psychological or other effects of the offense on the victim, the victim's family or guardian.

Article 56.03(e) provides:

Prior to the imposition of a sentence by the court in a criminal case, the court, if it has received a victim impact statement, shall consider the information provided in the statement. Before sentencing the defendant, the court shall permit the defendant or his counsel a reasonable time to read the statement, comment on the statement, and with the approval of the court, introduce testimony or other information alleging a factual inaccuracy in the statement ...

Article 56.03(e), however, appears to apply only to cases where sentence is not imposed by the jury. Furthermore, it does not address whether *testimony* by the victim, the victim's relatives, or the victim's guardian is permitted. Article 56.03, therefore, does not resolve the issue of whether victim impact *testimony* is admissible at the punishment phase of a capital trial under Texas law.

Texas Rule of Criminal Evidence 402 provides "All relevant evidence is admissible, except as otherwise provided by constitution, by statute, by these rules or by other rules prescribed pursuant to statutory authority. Evidence which is not relevant is inadmissible." Texas Rule of Criminal Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

At the punishment phase of a capital trial, the jury is required, after the State and the defendant present evidence, to answer two special issues (three if the defendant was found guilty as a party under Texas Penal Code Sections 7.01 and 7.02).

The first special issue requires the jury to determine if there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society, i.e., whether the defendant would probably be a future danger. Tex. Code Crim.Proc., Art. 37.071 § 2(b)(1). Victim impact evidence has no relevance in the determination of a defendant's future dangerousness and, if this was the only issue to be determined at punishment, Rules 401 and 402 would bar its admission.

The second special issue—the mitigation special issue—provides a vehicle by which the defendant may present evidence of his character and background and other evidence that could be considered by the jury as mitigating so as to warrant imposition of a life sentence rather than a death sentence. Tex.Code Crim.Proc., Art. 37.071 § 2(e). This special mitigation issue was enacted to comply with *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). In *Penry,* the Supreme Court held that the Texas death penalty scheme, as applied, was unconstitutional because it failed to provide a vehicle by which the defendant could present, and the jury could consider, evidence as mitigating in favor of imposition of a life sentence as opposed to death.

This Court has interpreted Section 2(e) broadly so as to allow a defendant to present, as evidence for the jury to consider as potentially mitigating, such matters as the defendant's youth at the time of commission of the offense, his family background if characterized by abuse or neglect, his history of drug or alcohol abuse, and evidence of mental illness or mental retardation. The defendant is also permitted to call witnesses who testify as to defendant's character, background and good deeds. In other words, the jury is provided evidence of the defendant as an individual before it determines the sentence to be imposed.

Is it not equally important—and relevant in the context of the *"Penry"* special issue—for the jury to be informed as to the character of the victim and the impact on the victim's family of his or her death? The Supreme Court of Tennessee could not have expressed it any better when it stated the following:

"It is an affront to the civilized members of the human race to say that at sentencing in a capital case, a parade of witnesses may praise the character, background and good deeds of Defendant (as was done in this case), without limitation as to relevancy, but nothing may be said that bears upon the character of, or the harm imposed, upon the victims."

*State v. Payne,* 791 S.W.2d 10, 19 (Tenn. 1990). It is my opinion that victim impact evidence is relevant in the context of the mitigation special issue and is admissible.

In order to avoid violation of the due process rights of the defendant and to minimize the risk of admission of irrelevant evidence, it is my opinion that only family members (i.e., close relatives and guardians) of the victim should be allowed to testify. This is consistent with the categories of persons permitted to file a victim impact statement under Article 56.03(a). Furthermore, should the State present evidence as to the victim's good character, the defendant, in rebuttal and consistent with the Rules of Criminal Evidence, may present evidence as to the victim's bad character.[1]

It has been suggested that allowing the admission of evidence as to the victim's good character might lead to juries punishing more severely defendants who kill victims who are of "good" character and are contributors to society. The other side of the argument is, of course, that defendants who kill victims who are of questionable character or who are not considered to be valuable members of society will be less likely to receive the death penalty. The Supreme Court addressed this matter thusly: "As a general matter, however, victim impact evidence is not offered to encourage comparative judgments of this kind—for instance, that the killer of a hardworking, devoted parent deserves the death penalty, but that the murderer of a reprobate does not. It is designed to show, instead, each victim's 'uniqueness as an individual human being' whatever the jury might think the loss to the community resulting from his death might be." *Payne,* 501 U.S. at 823, 111 S.Ct. at 2606.

In the present case, two witnesses testified at punishment as to the victim's (Karen Birky) good character: her sister and her coworker. Her coworker testified as to Miss Birkey's dedication to her students. Her sister testified as to Miss Birky's love of

1. The admissibility of victim impact evidence, although relevant, is still subject to Rule 403 and such evidence may be excluded if it is needlessly cumulative, misleads the jury, confuses the issues or if its probative value is substantially outweighed by the danger of unfair prejudice.

animals, her degree in special education and her membership in the National Guard.

Such evidence is relevant in the context of the mitigation special issue as it relates to the character of the victim and the impact of her loss on her family and close friends and is admissible under Rules 401 and 402. Appellant fails to demonstrate that this evidence should have been excludable under Rule 403 as needlessly cumulative or that its prejudicial effect on the jury was substantially in excess of its probative value. This evidence merely gave the jury information on who Miss Birky was—that she was more than just a name.[2] The trial judge did not abuse his discretion in admitting this evidence as relevant on the issue of punishment and deference should be given to his ruling. *Lane v. State*, 822 S.W.2d 35, 41 (Tex.Crim. App.1991); *Briddle v. State*, 742 S.W.2d 379, 391 (Tex.Crim.App.1987).

With these comments, I concur in the judgment of the Court.

**2.** A substantial majority of state high courts have ruled that victim impact evidence is admissible at the punishment phase of a capital trial as relevant on the issue of punishment. See *People v. Howard*, 147 Ill.2d 103, 167 Ill.Dec. 914, 937, 588 N.E.2d 1044, 1067 (1991); *Homick v. State*, 108 Nev. 127, 825 P.2d 600, 606 (1992); *Conner v. State*, 632 So.2d 1239, 1277 (Miss.1993). Courts in Alabama, California, Delaware, Florida, Idaho, Indiana, Maryland, Ohio, Pennsylvania, Virginia, and Wyoming have ruled similarly, adopting *Payne*. New Jersey's Supreme Court rejected *Payne*'s holding on state constitutional grounds. *State v. Erazo*, 126 N.J. 112, 594 A.2d 232 (1991). The Supreme Courts of Arizona, Georgia and Louisiana have held that victim impact evidence was not admissible due to restrictions against admissibility of such evidence under the statutes of their respective states. I acknowledge that the highest courts of Utah and Oregon, with capital sentencing schemes similar to that of Texas, have held that victim impact evidence is not admissible as it is irrelevant in the context of the special issues and may needlessly inflame the jury. *State v. Metz*, 131 Or. App. 706, 887 P.2d 795 (1994); *State v. Carter*, 888 P.2d 629 (Utah), *cert. denied*, — U.S. ——, 116 S.Ct. 163, 133 L.Ed.2d 105 (1995).