**Opinion filed April 2, 2009**



In The

# Eleventh Court of Appeals

————

## No. 11-07-00187-CR

————

## JONATHAN AARON HALLMARK, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 90th District Court**

**Stephens County, Texas**

**Trial Court Cause No. 31,034**

### O P I N I O N

Jonathan Aaron Hallmark appeals his conviction by a jury of the offense of murder. The jury assessed his punishment at life imprisonment in the Texas Department of Criminal Justice, Institutional Division, and a fine of $10,000. Hallmark contends in two issues that the trial court abused its discretion in denying his motion to suppress an oral statement made by him after he had previously invoked his right to remain silent because he never knowingly waived that right and that the trial court erred in allowing the mother of a child who witnessed the crime to testify at the punishment stage of the trial about the impact of the crime upon her child. We affirm.

Hallmark urges that the trial court abused its discretion in denying his motion to suppress an oral statement made by him when he had previously invoked his right to remain silent and had never

thereafter knowingly waived that right. In a hearing to determine whether to suppress evidence, the trial court is the sole judge of the weight of the testimony and the credibility of the witnesses. *Rayford v. State*, 125 S.W.3d 521, 528 (Tex. Crim. App. 2003). In reviewing a trial court ruling on a motion to suppress, we afford almost total deference to a trial court's determination of historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

George (Billy) Wade testified that he is the chief deputy of the Stephens County Sheriff's Department. He indicated that he was called to the scene of a shooting on September 10, 2006, at about 6:00 p.m. He said that, while he was en route to the scene of the shooting, he was told that the suspect in the shooting had gone to a residence at 309 South Newton Street. After finding Hallmark at that location, Deputy Wade read him his *Miranda*[1] rights. Deputy Wade acknowledged that Hallmark asked him if he could remain silent and that he told Hallmark he could if he wanted to do so. He indicated that Hallmark told him that he did not think it would help and that he did not think anything could help him now.

Calvin Cox testified that he is a Texas Ranger employed by the Texas Department of Public Safety. He indicated that he went to the Stephens County Sheriff's Department at approximately 10:00 p.m. to talk to Hallmark. He stated that, when he saw that Hallmark had blood on his hands, he asked Hallmark if he was okay or if he needed medical help. He said Hallmark told him that he was sure he was okay and did not need medical help. He related that, when he asked Hallmark if he wished to speak with him, Hallmark replied that he did.

Ranger Cox testified that, when he brought Hallmark into an office for the interview, he advised Hallmark of his *Miranda* rights and that Hallmark said he understood those rights. Ranger Cox acknowledged that he did not read the portion of a *Miranda* card that was entitled "Waiver of Rights" to Hallmark. He indicated that he did not know whether Hallmark had read the section entitled "Waiver of Rights" before signing the card. He acknowledged telling Hallmark, "You need to sign right here." He also acknowledged that he knew Hallmark did not want to speak to Deputy Wade. Ranger Cox insisted that, after Hallmark indicated he understood his rights, Hallmark never stopped, hesitated, told him that he did not want to talk, or "anything of that sort."

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

The trial court made numerous findings of fact and a few conclusions of law, which included a finding that Hallmark's oral statement was given voluntarily, knowingly, and intelligently. The trial court denied Hallmark's motion to suppress his statement to Ranger Cox. Subsequently, an audiotape of the interview with Ranger Cox was admitted into evidence.

The admissibility of statements obtained after the person in custody has decided to remain silent depends, under *Miranda*, on whether his or her right to stop questioning was scrupulously honored. *Michigan v. Mosley*, 423 U.S. 96, 103 (1975). In making this determination, we consider (1) whether the suspect was informed of his or her rights prior to the initial questioning, (2) whether the suspect was informed of the right to remain silent prior to the subsequent questioning, (3) the length of time between the initial questioning and the subsequent questioning, (4) whether the subsequent questioning focused on a different crime, and (5) whether police honored the suspect's initial invocation of the right to remain silent. *Maestas v. State*, 987 S.W.2d 59, 62 (Tex. Crim. App. 1999). Where, as here, the resolution of the issue as to whether Hallmark's right to remain silent was scrupulously honored does not depend on an evaluation of credibility and demeanor, we review the trial court's decision de novo. *Maestas*, 987 S.W.2d at 62.

Hallmark was informed of his right to remain silent prior to his initial questioning and prior to his subsequent questioning. The amount of time between the initial questioning by Deputy Wade and the subsequent questioning by Ranger Cox was approximately four hours. The subsequent questioning focused on the same crime. Deputy Wade honored Hallmark's initial desire to remain silent.

After performing our de novo review, we find that Hallmark's right to remain silent was scrupulously honored. Consequently, the trial court did not abuse its discretion when, by denying Hallmark's motion to suppress, it impliedly found that his right to remain silent was scrupulously honored.

In urging that the trial court abused its discretion by denying his motion to suppress, Hallmark primarily relies upon the cases of *Watson v. State*, 762 S.W.2d 591 (Tex. Crim. App. 1988); *Ochoa v. State*, 573 S.W.2d 796 (Tex. Crim. App. 1978); *Faulder v. State*, 611 S.W.2d 630 (Tex. Crim. App. 1979); and *Castillo v. State*, 616 S.W.2d 620, 621 (Tex. Crim. App. 1981). We find all of these cases to be distinguishable.

In *Watson*, the defendant, after being advised of his rights, was interrogated by two officers on four separate occasions. *Watson*, 762 S.W.2d at 593. After two interrogations during which

Watson answered no questions, the officers initiated a third interrogation without Watson indicating he wished to talk to them. *Id.* at 593-94. In *Watson*, the interrogation did not cease immediately after Watson made clear that he wished to remain silent. *Id.* at 600. In the case at bar, Hallmark's invocation of his right to remain silent was honored. Before proceeding to ask Hallmark any further questions, Ranger Cox first asked him if he wanted to talk to him. The officers in *Watson* initiated interview after interview without ascertaining that Watson wanted to talk to them, after he had made clear, by not answering any questions, that he wished to remain silent.

In *Ochoa*, the court held that the trial court abused its discretion in admitting Ochoa's confession into evidence because the interrogation did not cease after Ochoa in some way indicated to the interrogating officer that he wanted to exercise his right to counsel. *Ochoa*, 573 S.W.2d at 800-01. This case has no applicability to the case at bar because Hallmark never in any way sought to invoke his right to counsel regarding Ranger Cox's interview.

In *Faulder*, the court found that Faulder's statement to officers should have been excluded because his right to remain silent was not scrupulously honored when officers did not stop their interrogation after he invoked his right to remain silent. *Faulder*, 611 S.W.2d at 634-35. As previously noted, in the case at bar, once Hallmark invoked his right to remain silent, interrogation ceased until several hours later, when another officer asked him if he wanted to talk and reminded him of his rights.

In *Castillo*, the court held that Castillo's statement was inadmissible where he had invoked his right to counsel before a magistrate and the State failed to show that he waived his right to counsel shortly after having made the request to the magistrate for the appointment of counsel. *Castillo*, 616 S.W.2d at 623. This case is also inapplicable to the case at bar because, as we have previously noted, Hallmark never invoked his right to counsel. We overrule issue one.

Hallmark urges in issue two that the trial court erred in allowing the mother of a child who witnessed the crime to testify about the impact of the crime upon her child. Hallmark acknowledges that the child's mother testified at the punishment phase of the trial that the child, who had apparently witnessed the shooting that killed the victim, was scared of all noises, had nightmares, would not sleep in her own bed, was scared to go out by herself, and had counseling through her school.

During the punishment phase of the trial, evidence may be offered by the State and the defendant as to any matter the court deems relevant to sentencing. TEX. CODE CRIM. PROC. ANN.

4

art. 37.07, § 3(a)(1) (Vernon Supp. 2008). We hold that evidence of harm to a third person reasonably resulting from appellant's actions in committing the offense constitutes evidence relevant to sentencing. Accordingly, we hold that the trial court did not abuse its discretion in admitting the evidence.

Hallmark contends that the introduction of victim impact evidence with regard to a victim not named in the indictment has a risk of prejudice that is unacceptably high and that it is not authorized by TEX. CODE CRIM. PROC. ANN. art. 56.03(e) (Vernon 2006), which deals with the admissibility of victim impact evidence. He relies upon the cases of *Haley v. State*, 173 S.W.3d 510 (Tex. Crim. App. 2005); *Cantu v. State*, 939 S.W.2d 627 (Tex. Crim. App. 1997); *Boston v. State*, 965 S.W.2d 546 (Tex. App.—Houston [14th Dist.] 1997, no pet.); and *Smith v. State*, 919 S.W.2d 96 (Tex. Crim. App. 1996).

In *Haley*, the court stated that victim impact evidence or testimony generally may be admissible at the punishment phase when that evidence has some bearing on the defendant's personal responsibility and moral culpability. *Haley*, 173 S.W.3d at 517. The court noted that the introduction of such victim impact evidence is limited even further when a party attempts to introduce this evidence concerning a victim of an extraneous offense and one not named in the indictment. *Id.* The court held that victim impact testimony regarding a homicide was irrelevant to the determination of Haley's punishment where she was charged with possession of cocaine with intent to deliver, where the indictment did not allege a victim. *Id.* at 518. In the case at bar, the victim impact evidence related to a child who, although not the complainant, was a victim of the offense for which Hallmark was indicted. We, therefore, hold that the evidence did have some bearing on Hallmark's personal responsibility and moral culpability with respect to the offense for which he was indicted.

In *Cantu*, the defendant was on trial for capital murder involving the death of one of two young girls following their being raped by a gang. *Cantu*, 939 S.W.2d at 630. The court held that the testimony of the mother of the second victim, the one for which Cantu was not on trial, as to the victim's character and the effect upon her family was not relevant and, therefore, inadmissible. *Id.* at 637. The court stated, "The danger of unfair prejudice to a defendant inherent in the introduction of 'victim impact' evidence with respect to a victim not named in the indictment on which he is being tried is unacceptably high." *Id.*

5

Subsequently, in *Roberts v. State*, the court held that testimony by the victim of an extraneous robbery as to the emotional impact the offense had on her life was admissible. *Roberts v. State*, 220 S.W.3d 521, 531 (Tex. Crim. App. 2007). Presumably, the victim of an extraneous robbery was not named in the indictment. In the case at bar, the evidence concerns the effect of Hallmark's offense upon someone other than the victim. Although not the victim, the child traumatized by Hallmark's actions is no less a victim of his offense. If testimony concerning the effect on a victim of an extraneous offense is admissible, it would seem that testimony concerning the effect of a victim other than the complainant of the offense for which the defendant is indicted would also be admissible.

In *Boston*, the court, relying on *Cantu*, held that the trial court abused its discretion by allowing the victim of an extraneous robbery to testify concerning the offense's impact on her life. *Boston*, 965 S.W.2d at 550. We find the facts in *Boston* to be essentially the same as those in *Roberts*. Consequently, we find *Boston* to be inconsistent with a recent case of the Texas Court of Criminal Appeals and, therefore, unpersuasive.

In *Smith*, the court held that evidence concerning the character of the victim was not relevant to sentencing in a capital murder case. *Smith*, 919 S.W.2d at 101-02. We note that, in a later case, the court held that evidence of the victim's character is admissible to show the uniqueness of the victim, the harm caused by the defendant, and as rebuttal to the defendant's mitigating evidence but that, when the evidence shifts from humanizing the victim and illustrating the harm caused by the defendant to measuring the worth of the victim compared to other members of society, the State exceeds the bounds of permissible testimony. *Mosley v. State*, 983 S.W.2d 249, 262 (Tex. Crim. App. 1998). In any event, *Smith* is not applicable to the case at bar because the evidence in this case involved evidence of the impact of the crime upon a victim of that crime, although not the complainant, not evidence of that victim's character. Hallmark makes no suggestion that the testimony in any way measured the worth of the child compared to other members of society.

Hallmark suggests that the trial court abused its discretion in admitting evidence of the impact of the offense upon the child because such testimony is not contemplated by Article 56.03(e) in that the child was not a victim alleged in the indictment. He has presented no authority for this suggestion, and we are not aware of any. We have examined this provision of the Texas Code of Criminal Procedure and find nothing contained therein that is inconsistent with our opinion as to the admissibility of evidence of the impact of Hallmark's offense upon the child. We overrule issue two.

6

The judgment of the trial court is affirmed.


                                                      JOHN G. HILL

                                                      JUSTICE


April 2, 2009

Publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of:  Wright, C.J.,
Strange, J., and Hill, J.[2]

---

[2]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.