Opinion filed April 2, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed April 2,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00187-CR

                                                       ________

 

                         JONATHAN
AARON HALLMARK, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                          On
Appeal from the 90th District Court

 

                                                       Stephens
County, Texas

 

                                                   Trial
Court Cause No. 31,034

 



 

                                                                   O
P I N I O N

Jonathan
Aaron Hallmark appeals his conviction by a jury of the offense of murder.  The
jury assessed his punishment at life imprisonment in the Texas Department of
Criminal Justice, Institutional Division, and a fine of $10,000.  Hallmark
contends in two issues that the trial court abused its discretion in denying
his motion to suppress an oral statement made by him after he had previously
invoked his right to remain silent because he never knowingly waived that right
and that the trial court erred in allowing the mother of a child who witnessed
the crime to testify at the punishment stage of the trial about the impact of
the crime upon her child.  We affirm.








Hallmark
urges that the trial court abused its discretion in denying his motion to
suppress an oral statement made by him when he had previously invoked his right
to remain silent and had never thereafter knowingly waived that right.  In a
hearing to determine whether to suppress evidence, the trial court is the sole
judge of the weight of the testimony and the credibility of the witnesses.  Rayford
v. State, 125 S.W.3d 521, 528 (Tex. Crim. App. 2003).  In reviewing a trial
court ruling on a motion to suppress, we afford almost total deference to a
trial court=s
determination of historical facts that the record supports, especially when the
trial court=s fact
findings are based on an evaluation of credibility and demeanor.  Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

George
(Billy) Wade testified that he is the chief deputy of the Stephens County
Sheriff=s Department. 
He indicated that he was called to the scene of a shooting on September 10,
2006, at about 6:00 p.m.  He said that, while he was en route to the scene of
the shooting, he was told that the suspect in the shooting had gone to a residence
at 309 South Newton Street.  After finding Hallmark at that location, Deputy
Wade read him his Miranda[1] rights. 
Deputy Wade acknowledged that Hallmark asked him if he could remain silent and
that he told Hallmark he could if he wanted to do so.  He indicated that
Hallmark told him that he did not think it would help and that he did not think
anything could help him now.

Calvin
Cox testified that he is a Texas Ranger employed by the Texas Department of
Public Safety.  He indicated that he went to the Stephens County Sheriff=s Department at
approximately 10:00 p.m. to talk to Hallmark.  He stated that, when he saw that
Hallmark had blood on his hands, he asked Hallmark if he was okay or if he
needed medical help.  He said Hallmark told him that he was sure he was okay
and did not need medical help.  He related that, when he asked Hallmark if he
wished to speak with him, Hallmark replied that he did.








Ranger
Cox testified that, when he brought Hallmark into an office for the interview,
he advised Hallmark of his Miranda rights and that Hallmark said he
understood those rights.  Ranger Cox acknowledged that he did not read the
portion of a Miranda card that was entitled AWaiver of Rights@
to Hallmark.  He indicated that he did not know whether Hallmark had read the
section entitled AWaiver
of Rights@ before
signing the card.  He acknowledged telling Hallmark, AYou need to sign right here.@  He also acknowledged that
he knew Hallmark did not want to speak to Deputy Wade.  Ranger Cox insisted
that, after Hallmark indicated he understood his rights, Hallmark never
stopped, hesitated, told him that he did not want to talk, or Aanything of that sort.@    The trial court made
numerous findings of fact and a few conclusions of law, which included a
finding that Hallmark=s
oral statement was given voluntarily, knowingly, and intelligently.  The trial
court denied Hallmark=s
motion to suppress his statement to Ranger Cox.  Subsequently, an audiotape of
the interview with Ranger Cox was admitted into evidence.

The
admissibility of statements obtained after the person in custody has decided to
remain silent depends, under Miranda, on whether his or her right to
stop questioning was scrupulously honored.  Michigan v. Mosley, 423 U.S.
96, 103 (1975).  In making this determination, we consider (1) whether the
suspect was informed of his or her rights prior to the initial questioning, (2)
whether the suspect was informed of the right to remain silent prior to the
subsequent questioning, (3) the length of time between the initial questioning
and the subsequent questioning, (4) whether the subsequent questioning focused
on a different crime, and (5) whether police honored the suspect=s initial invocation of the
right to remain silent.  Maestas v. State, 987 S.W.2d 59, 62 (Tex. Crim.
App. 1999).  Where, as here, the resolution of the issue as to whether
Hallmark=s right to
remain silent was scrupulously honored does not depend on an evaluation of
credibility and demeanor, we review the trial court=s decision de novo.  Maestas, 987
S.W.2d at 62.

Hallmark
was informed of his right to remain silent prior to his initial questioning and
prior to his subsequent questioning.  The amount of time between the initial
questioning by Deputy Wade and the subsequent questioning by Ranger Cox was
approximately four hours.  The subsequent questioning focused on the same
crime.  Deputy Wade honored Hallmark=s
initial desire to remain silent.    

After
performing our de novo review, we find that Hallmark=s right to remain silent was scrupulously
honored.  Consequently, the trial court did not abuse its discretion when, by
denying Hallmark=s
motion to suppress, it impliedly found that his right to remain silent was
scrupulously honored.

 In
urging that the trial court abused its discretion by denying his motion to
suppress, Hallmark primarily relies upon the cases of Watson v. State,
762 S.W.2d 591 (Tex. Crim. App. 1988); Ochoa v. State, 573 S.W.2d 796
(Tex. Crim. App. 1978); Faulder v. State, 611 S.W.2d 630 (Tex. Crim.
App. 1979); and Castillo v. State, 616 S.W.2d 620, 621 (Tex. Crim. App.
1981).  We find all of these cases to be distinguishable.








In
Watson, the defendant, after being advised of his rights, was
interrogated by two officers on four separate occasions.  Watson, 762
S.W.2d at 593.  After two interrogations during which Watson answered no
questions, the officers initiated a third interrogation without Watson
indicating he wished to talk to them.  Id. at 593-94.  In Watson,
the interrogation did not cease immediately after Watson made clear that he
wished to remain silent.  Id. at 600.  In the case at bar, Hallmark=s invocation of his right
to remain silent was honored.  Before proceeding to ask Hallmark any further
questions, Ranger Cox first asked him if he wanted to talk to him.  The
officers in Watson initiated interview after interview without
ascertaining that Watson wanted to talk to them, after he had made clear, by
not answering any questions, that he wished to remain silent.

In
Ochoa, the court held that the trial court abused its discretion in
admitting Ochoa=s confession
into evidence because the interrogation did not cease after Ochoa in some way
indicated to the interrogating officer that he wanted to exercise his right to
counsel.  Ochoa, 573 S.W.2d at 800-01.  This case has no applicability
to the case at bar because Hallmark never in any way sought to invoke his right
to counsel regarding Ranger Cox=s
interview.

In
Faulder, the court found that Faulder=s
statement to officers should have been excluded because his right to remain
silent was not scrupulously honored when officers did not stop their
interrogation after he invoked his right to remain silent.  Faulder, 611
S.W.2d at 634-35.  As previously noted, in the case at bar, once Hallmark
invoked his right to remain silent, interrogation ceased until several hours
later, when another officer asked him if he wanted to talk and reminded him of
his rights.  

In
Castillo, the court held that Castillo=s
statement was inadmissible where he had invoked his right to counsel before a
magistrate and the State failed to show that he waived his right to counsel
shortly after having made the request to the magistrate for the appointment of
counsel.  Castillo, 616 S.W.2d at 623.  This case is also inapplicable
to the case at bar because, as we have previously noted, Hallmark never invoked
his right to counsel.  We overrule issue one.

Hallmark
urges in issue two that the trial court erred in allowing the mother of a child
who witnessed the crime to testify about the impact of the crime upon her
child.  Hallmark acknowledges that the child=s
mother testified at the punishment phase of the trial that the child, who had
apparently witnessed the shooting that killed the victim, was scared of all
noises, had nightmares, would not sleep in her own bed, was scared to go out by
herself, and had counseling through her school.








During
the punishment phase of the trial, evidence may be offered by the State and the
defendant as to any matter the court deems relevant to sentencing.  Tex. Code Crim. Proc. Ann. art. 37.07, ' 3(a)(1) (Vernon Supp.
2008).  We hold that evidence of harm to a third person reasonably resulting
from appellant=s
actions in committing the offense constitutes evidence relevant to sentencing. 
Accordingly, we hold that the trial court did not abuse its discretion in
admitting the evidence.

Hallmark
contends that the introduction of victim impact evidence with regard to a
victim not named in the indictment has a risk of prejudice that is unacceptably
high and that it is not authorized by Tex.
Code Crim. Proc. Ann. art. 56.03(e) (Vernon 2006), which deals with the
admissibility of victim impact evidence.  He relies upon the cases of Haley
v. State, 173 S.W.3d 510 (Tex. Crim. App. 2005); Cantu v. State, 939
S.W.2d 627 (Tex. Crim. App. 1997); Boston v. State, 965 S.W.2d 546 (Tex.
App.CHouston [14th
Dist.] 1997, no pet.); and Smith v. State, 919 S.W.2d 96 (Tex. Crim.
App. 1996).

In
Haley, the court stated that victim impact evidence or testimony
generally may be admissible at the punishment phase when that evidence has some
bearing on the defendant=s
personal responsibility and moral culpability.  Haley, 173 S.W.3d at
517.  The court noted that the introduction of such victim impact evidence is
limited even further when a party attempts to introduce this evidence
concerning a victim of an extraneous offense and one not named in the
indictment.  Id.  The court held that victim impact testimony regarding
a homicide was irrelevant to the determination of Haley=s punishment where she was charged with
possession of cocaine with intent to deliver, where the indictment did not
allege a victim.  Id. at 518.  In the case at bar, the victim impact
evidence related to a child who, although not the complainant, was a victim of
the offense for which Hallmark was indicted.  We, therefore, hold that the
evidence did have some bearing on Hallmark=s
personal responsibility and moral culpability with respect to the offense for
which he was indicted.

In
Cantu, the defendant was on trial for capital murder involving the death
of one of two young girls following their being raped by a gang.  Cantu,
939 S.W.2d at 630.  The court held that the testimony of the mother of the
second victim, the one for which Cantu was not on trial, as to the victim=s character and the effect
upon her family was not relevant and, therefore, inadmissible.  Id. at
637.  The court stated, AThe
danger of unfair prejudice to a defendant inherent in the introduction of >victim impact= evidence with respect to a
victim not named in the indictment on which he is being tried is unacceptably
high.@  Id.  








Subsequently,
in Roberts v. State, the court held that testimony by the victim of an
extraneous robbery as to the emotional impact the offense had on her life was
admissible.  Roberts v. State, 220 S.W.3d 521, 531 (Tex. Crim. App.
2007).  Presumably, the victim of an extraneous robbery was not named in the
indictment.   In the case at bar, the evidence concerns the effect of Hallmark=s offense upon someone
other than the victim.  Although not the victim, the child traumatized by
Hallmark=s actions is
no less a victim of his offense.  If testimony concerning the effect on a
victim of an extraneous offense is admissible, it would seem that testimony
concerning the effect of a victim other than the complainant of the offense for
which the defendant is indicted would also be admissible.

In
Boston, the court, relying on Cantu, held that the trial court
abused its discretion by allowing the victim of an extraneous robbery to
testify concerning the offense=s
impact on her life.  Boston, 965 S.W.2d at 550.  We find the facts in Boston
to be essentially the same as those in Roberts.  Consequently, we
find Boston to be inconsistent with a recent case of the Texas Court of
Criminal Appeals and, therefore, unpersuasive.

In
Smith, the court held that evidence concerning the character of the
victim was not relevant to sentencing in a capital murder case.  Smith,
919 S.W.2d at 101-02.  We note that, in a later case, the court held that
evidence of the victim=s
character is admissible to show the uniqueness of the victim, the harm caused
by the defendant, and as rebuttal to the defendant=s mitigating evidence but that, when the
evidence shifts from humanizing the victim and illustrating the harm caused by
the defendant to measuring the worth of the victim compared to other members of
society, the State exceeds the bounds of permissible testimony.  Mosley v.
State, 983 S.W.2d 249, 262 (Tex. Crim. App. 1998).  In any event, Smith
is not applicable to the case at bar because the evidence in this case involved
evidence of the impact of the crime upon a victim of that crime, although not
the complainant, not evidence of that victim=s
character.  Hallmark makes no suggestion that the testimony in any way measured
the worth of the child compared to other members of society.  

Hallmark
suggests that the trial court abused its discretion in admitting evidence of
the impact of the offense upon the child because such testimony is not
contemplated by Article 56.03(e) in that the child was not a victim alleged in
the indictment.  He has presented no authority for this suggestion, and we are
not aware of any.  We have examined this provision of the Texas Code of
Criminal Procedure and find nothing contained therein that is inconsistent with
our opinion as to the admissibility of evidence of the impact of Hallmark=s offense upon the child. 
We overrule issue two.

 








The
judgment of the trial court is affirmed.

 

 

JOHN G. HILL

JUSTICE

 

April 2, 2009

Publish.  See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

Strange, J., and Hill, J.[2]









[1]Miranda v. Arizona, 384 U.S. 436 (1966).





[2]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth, sitting by assignment.